**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ANAND ROY, derivatively on behalf of NIKOLA CORPORATION,<br><br>    Plaintiff,<br><br>    vs.<br><br><br>MARK A. RUSSELL, MICHAEL LOHSCHELLER, STEPHEN J. GIRSKY, KIM J. BRADY, ANASTASIYA PASTERICK, LYNN FORESTER DE ROTHSCHILD, MICHAEL L. MANSUETTI, GERRIT A. MARX, MARY L. PETROVICH, STEVEN M. SHINDLER, BRUCE L. SMITH, DEWITT C. THOMPSON, V, and ANDREW M. VESEY,<br><br>    Defendants,<br><br>    and<br><br>NIKOLA CORPORATION,<br><br>    Nominal Defendant | Case No.: |

<u>**VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**</u>

**INTRODUCTION**

Plaintiff Anand Roy ("Plaintiff"), by Plaintiff's undersigned attorneys, derivatively and on behalf of Nominal Defendant Nikola Corporation ("Nikola" or the "Company"), files this Verified Shareholder Derivative Complaint against Individual Defendants Mark A. Russell ("Russell"), Michael Lohscheller ("Lohscheller"), Stephen J. Girsky ("Girsky"), Kim J. Brady ("Brady"), Anastasiya Pasterick ("Pasterick"), Lynn Forester De Rothschild ("Rothschild"), Michael L. Mansuetti ("Mansuetti"), Gerrit A. Marx ("Marx"), Mary L. Petrovich ("Petrovich"), Steven M. Shindler ("Shindler"), Bruce L. Smith ("Smith"), Dewitt C. Thompson, V ("Thompson"), and Andrew M. Vesey ("Vesey") (collectively, the "Individual Defendants" and together with Nikola,

1

the "Defendants") for breaches of their fiduciary duties as directors and/or officers of Nikola, unjust enrichment, abuse of control, gross mismanagement, waste of corporate assets, for violations of Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and for contribution under Sections 10(b) and 21D of the Exchange Act against Defendants Russell, Lohscheller, Girsky, Brady, and Pasterick. As for Plaintiff's complaint against the Individual Defendants, Plaintiff alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Nikola, legal filings, news reports, securities analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a shareholder derivative action that seeks to remedy wrongdoing committed by Nikola's current and/or former directors and officers from February 25, 2022 through September 7, 2023, both dates inclusive (the "Relevant Period").

2.      Nikola purports to operate as a "technology innovator and integrator." Nikola claims to be "the zero-emissions transportation industry leader" through "world-class strategic partnerships, groundbreaking research and development, and a revolutionary business model."

3.      The Company's business is comprised of two separate business units: Truck and Energy. The Truck business is focused on developing and commercializing battery electric vehicles ("BEV"), as well as hydrogen fuel cell electric vehicles. Nikola's Truck unit strives to

"provide environmentally friendly, cost-effective solutions to the short-haul, medium-haul, and long-haul trucking sector."

4.      Nikola's Energy business develops and constructs a "hydrogen fueling ecosystem" and provides charging support for BEV trucks, in order to meet "the anticipated demand for [Nikola's]… customers."

5.      On June 23, 2023, a Nikola Tre BEV caught fire at Nikola headquarters, with the fire ultimately spreading to four other trucks. The fire prompted Nikola to open an investigation into the incident. That morning, Nikola posted a response to the fire on X, formerly known as Twitter, stating, in relevant part, that "[f]oul play is suspected as a vehicle was seen in the area of the affected trucks just prior to the incident and an investigation is underway."

6.      Despite Nikola's suggestion that foul play caused the truck fire on June 23, 2023, that same day, the Company's stock price fell $0.09 per share to close at $1.29 per share, a 6.52% decline.

7.      On August 11, 2023, in contravention of Nikola's earlier suggestion of foul play, the Company recalled all 209 BEV trucks Nikola had ever built or delivered. The recall was spurred by Nikola's finding that  a coolant leak inside a battery pack caused the truck fire on June 23, 2023.

8.      On August 14, 2023, following the issuance of the recall, Nikola's stock price fell $0.13 per share to close at $1.82 per share, a 6.67% decrease.

9.      As a result of the same battery pack deficiencies that caused the fire on June 23, 2023, another Nikola BEV truck caught fire at a warehouse in Tempe, Arizona, on September 4, 2023.

10.     Just four days later, on September 8, 2023, another Nikola BEV truck ignited near Nikola's headquarters. The Company sent a statement to *Electrek.com*, a news website devoted to the electric transportation and sustainable energy industry, that stated "there was a thermal incident with one engineering validation battery-electric truck near Nikola's Pheonix headquarters. No one was injured. This pre-production truck was outside and undergoing battery fire investigation and testing."

11.     Following this statement, on September 8, 2023, Nikola's stock price fell $0.16 per share to close at $0.88 per share, a 15.38% drop.

12.     During the Relevant Period, the Individual Defendants made materially false and misleading statements regarding Nikola's business, operations, and compliance policies. The Individual Defendants specifically made false and/or misleading statements and/or failed to disclose that: (i) Nikola's safety and structural controls relating to the manufacture of battery components were materially deficient; (ii) as a result, Nikola's vehicles faced a heightened risk of product recall as the vehicles were not safe to operate, rendering the vehicles unusable; and (iii) as a further result of the foregoing, Nikola's public statements were materially false and misleading at all times during the Relevant Period.

13.     The Individual Defendants also breached their fiduciary duties by failing to correct and/or causing Nikola to fail to correct these false and misleading statements and omissions of material fact, while, during the Relevant Period, Defendants Russell, Pasterick, and Lohscheller all engaged in insider trading.

14.     The Individual Defendants' breaches of fiduciary duty and other misconduct have subjected the Company, Defendant Girsky, Nikola's Chief Executive Officer ("CEO"), Defendant Lohscheller, Nikola's former CEO, Defendant Russell, Nikola's former CEO, Defendant Brady,

Nikola's former Chief Financial Officer ("CFO"), and Defendant Pasterick, Nikola's most recent CFO, to a federal securities fraud class action lawsuit pending in the United States District Court for the District of Arizona (the "Securities Class Action"). The federal securities fraud class action lawsuit has further subjected Nikola to the need to undertake internal investigations, the need to implement adequate internal controls, losses from the waste of corporate assets, and losses due to the unjust enrichment of the Individual Defendants who were improperly overcompensated by the Company and/or who benefited from the wrongdoing alleged herein – the Company will have to expend many millions of dollars.

15.     The Company has been substantially damaged as a result of the Individual Defendants' knowing or highly reckless breaches of fiduciary duty and other misconduct.

16.     In light of the breaches of fiduciary duty engaged in by the Individual Defendants, most of whom are the Company's current directors, of the collective engagement in fraud and misconduct by the Company's directors, of the substantial likelihood of the directors' liability in this derivative action and of one of the directors' liability in the Securities Class Action, and of their not being disinterested and/or independent directors, a majority of the Nikola Board of Directors (the "Board") cannot consider a demand to commence litigation against themselves on behalf of the Company with the requisite level of disinterestedness and independence.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1), Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Section 21D of the Exchange Act (15 U.S.C. § 78u-4(f)).

18.     Plaintiff's claims also raise a federal question pertaining to the claims made in the Securities Class Action based on violations of the Exchange Act.

19.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

20.     This derivative action is not a collusive action to confer jurisdiction on a court of the United States that it would not otherwise have.

21.     Venue is proper in this District because Nikola is incorporated in this District. In addition, a substantial portion of the transactions and wrongs complained of herein occurred in this District, the Defendants have conducted business in this District, and Defendants' actions have had an effect in this District.

## PARTIES

### Plaintiff Roy

22.     Plaintiff is a current shareholder of Nikola. Plaintiff has continuously held Nikola common stock since July 17, 2020.

### Nominal Defendant Nikola

23.     Nominal Defendant Nikola is a Delaware corporation headquartered at 4141 E Broadway Road, Phoenix, Arizona 85040. Nikola stock trades on NASDAQ under the ticker symbol "NKLA."

### Defendant Russell

24.     Defendant Russell is a former CEO, President, and Company director of Nikola. Defendant Russell served as CEO from June 2020 to November 2020. Additionally, Defendant Russell served as a Company director from June 2020 until January 2023. Defendant Russell ceased serving as President on August 9, 2022. According to the Company's proxy statement filed on Schedule 14A with the SEC on April 25, 2023 (the "2023 Proxy Statement"), as of April 10,

2023, Defendant Russell beneficially owned 44,888,599 shares of the Company's common stock, representing 7.1% of the Company's total outstanding common stock as of that date. Given that the price per share of the Company's common stock at the close of trading on April 10, 2023 was $1.19, Defendant Russell beneficially owned approximately $53,417,432.81 worth of Nikola common stock as of that date.

25.     For the fiscal year ending December 31, 2022 ("Fiscal Year 2022"), Defendant Russell received $5,032,960 in total compensation, which consisted entirely of stock awards.

26.     During the Relevant Period, when the Company materially misstated information to the investing public to keep the stock price inflated, and before the scheme was exposed, Defendant Russell made the following sales of Company stock:

| Date | Number of Shares | Price Per Share | Proceeds |
|---|---|---|---|
| September 15, 2022 | 150,000 | $5.29 | $793,500 |
| September 16, 2022 | 150,000 | $5.13 | $769,500 |
| September 19, 2022 | 91,114 | $4.94 | $449,738 |
| September 20, 2022 | 75,000 | $4.57 | $342,900 |
| September 21, 2022 | 75,000 | $4.33 | $324,375 |
| September 22, 2022 | 75,000 | $4.11 | $307,875 |
| September 23, 2022 | 75,000 | $3.90 | $292,800 |
| September 26, 2022 | 75,000 | $3.93 | $295,050 |
| September 27, 2022 | 75,000 | $3.90 | $292,425 |
| September 28, 2022 | 75,000 | $3.92 | $293,775 |
| September 29, 2022 | 75,000 | $3.65 | $273,375 |
| October 4, 2022 | 75,000 | $3.78 | $283,350 |
| October 5, 2022 | 75,000 | $3.68 | $276,000 |
| October 6, 2022 | 75,000 | $3.60 | $270,150 |
| October 7, 2022 | 75,000 | $3.31 | $248,100 |
| October 10, 2022 | 75,000 | $3.01 | $225,600 |
| October 11, 2022 | 75,000 | $2.96 | $222,225 |
| October 12, 2022 | 75,000 | $2.95 | $221,400 |
| October 13, 2022 | 75,000 | $2.97 | $222,450 |
| October 14, 2022 | 75,000 | $2.99 | $224,175 |

| | | | |
|---|---|---|---|
| October 17, 2022 | 75,000 | $3.03 | $226,949 |
| October 18, 2022 | 75,000 | $3.06 | $229,800 |
| October 19, 2022 | 75,000 | $2.88 | $215,850 |
| October 20, 2022 | 75,000 | $2.91 | $218,025 |
| October 21, 2022 | 75,000 | $2.91 | $218,550 |
| October 24, 2022 | 75,000 | $2.90 | $217,274 |
| October 25, 2022 | 75,000 | $3.09 | $231,600 |
| October 26, 2022 | 75,000 | $3.15 | $236,324 |
| October 27, 2022 | 75,000 | $3.10 | $232,125 |
| October 28, 2022 | 75,000 | $3.14 | $235,200 |
| October 31, 2022 | 75,000 | $3.52 | $264,225 |
| November 1, 2022 | 75,000 | $3.53 | $264,900 |
| November 2, 2022 | 75,000 | $3.41 | $255,750 |
| November 3, 2022 | 75,000 | $3.16 | $236,775 |
| November 4, 2022 | 75,000 | $2.95 | $220,950 |
| November 7, 2022 | 75,000 | $2.86 | $214,575 |
| November 14, 2022 | 75,000 | $2.99 | $224,025 |
| November 15, 2022 | 75,000 | $3.05 | $228,675 |
| November 18, 2022 | 75,000 | $2.78 | $208,275 |
| November 21, 2022 | 75,000 | $2.57 | $192,525 |
| November 22, 2022 | 150,000 | $2.34 | $351,300 |
| November 23, 2022 | 75,000 | $2.36 | $177,075 |
| November 25, 2022 | 75,000 | $2.39 | $179,250 |
| November 28, 2022 | 75,000 | $2.33 | $174,525 |
| November 29, 2022 | 75,000 | $2.35 | $176,025 |
| December 6, 2022 | 75,000 | $2.55 | $190,950 |
| December 7, 2022 | 75,000 | $2.42 | $181,125 |
| December 8, 2022 | 75,000 | $2.37 | $177,900 |
| December 9, 2022 | 75,000 | $2.36 | $176,925 |
| December 12, 2022 | 75,000 | $2.34 | $175,500 |
| December 13, 2022 | 927,429 | $2.15 | $1,997,682 |
| December 16, 2022 | 75,000 | $2.32 | $174,075 |
| December 19, 2022 | 75,000 | $2.29 | $171,375 |
| December 22, 2022 | 75,000 | $2.37 | $177,450 |
| December 23, 2022 | 75,000 | $2.57 | $192,900 |
| December 29, 2022 | 150,000 | $2.34 | $350,700 |
| December 30, 2022 | 150,000 | $2.21 | $331,350 |

| May 11, 2023 | 75,000 | $0.79 | $59,475 |
| May 12, 2023 | 252,260 | $0.78 | $196,762 |
| **TOTAL** | **5,845,803** | **-** | **$16,813,479** |

27.     His lucrative insider sales, made with knowledge of material non-public information before the material misstatements and omissions were exposed, demonstrates his motive in facilitating and participating in the scheme.

28.     Nikola's 2023 Proxy Statement stated the following about Defendant Russell:

Biographical Information

Mark A. Russell has served as a member of our board of directors since June 2020. Mr. Russell served as our Chief Executive Officer from June 2020 to November 2022 and as our President from June 2020 to August 2022, as President of Legacy Nikola, from February 2019 to June 2020, and as a member of Legacy Nikola's board of directors from July 2019 to June 2020. From August 2018 to February 2019, Mr. Russell explored new opportunities. Prior to that, Mr. Russell served as President and Chief Operating Officer of Worthington Industries (NYSE: WOR), a diversified metals manufacturing company, from August 2012 to August 2018. Mr. Russell received a B.I.S. in integrated studies from Weber State University and a juris doctor from Brigham Young University.

Qualifications

We believe Mr. Russell is qualified to serve on our board of directors due to his extensive leadership and management experience at various public and private companies, including his past experience serving as our President and Chief Executive Officer.

**Defendant Lohscheller**

29.     Defendant Lohscheller served as Nikola's CEO from November 2022 until August 2023. Defendant Lohscheller additionally served as President of Nikola from August 2022 until August 2023. According to the 2023 Proxy Statement, as of April 10, 2023, Defendant Lohscheller beneficially owned 80,704 shares of Nikola common stock. Given that the price per share of the Company's stock at the close of trading on April 10, 2023 was $1.19, Defendant Lohscheller beneficially owned $96,037.76 worth of Nikola common stock as of that date.

30.     For Fiscal Year 2022, Defendant Lohscheller received $9,438,959 in total compensation from the Company. This included $164,423 in salary, $20,000 in bonuses, $9,248,781 in stock awards, and $5,755 in all other compensation.

31.     During the Relevant Period, when the Company materially misstated information to the investing public to keep the stock price inflated, and before the scheme was exposed, Defendant Lohscheller made the following sales of Company stock:

| Date | Number of Shares | Price Per Share | Proceeds |
|---|---|---|---|
| September 7, 2022 | 19,973 | $5.09 | $101,582 |
| March 6, 2023 | 27,863 | $2.11 | $58,846 |
| August 10, 2023 | 68,985 | $1.96 | $135,072 |
| **TOTAL** | **116,821** | **-** | **$295,500** |

32.     His lucrative insider sales, made with knowledge of material non-public information before the material misstatements and omissions were exposed, demonstrates his motive in facilitating and participating in the scheme.

33.     Nikola's 2023 Proxy Statement, states the following about Defendant Lohscheller:

Biographical Information

Michael Lohscheller has served as our President and as a member of our board of directors since August 2022 and was also appointed as our Chief Executive Officer in November 2022. Prior to that, Mr. Lohscheller served as President of Nikola Motor division from March 2022 to November 2022. Prior to joining us, Mr. Lohscheller served as the Global Chief Executive Officer of VinFast LLC, a private automotive manufacturer, from September 2021 to December 2021. Prior to that, from June 2017 to August 2021, Mr. Lohscheller served as Chief Executive Officer and board member at Group PSA of Opel Automobile GmbH, a German automobile manufacturer, and from September 2012 to June 2017, as Chief Financial Officer of Opel Group, General Motors Europe. Mr. Lohscheller served in various capacities at Volkswagen Group of America, a German automobile company, including as Chief Financial Officer from January 2008 to August 2012, and as Director of Group Marketing from 2004 to 2007. From 2001 to 2004, Mr. Lohscheller served as the Chief Financial Officer of Mitsubishi Motors Europe, a Japanese automotive manufacturer. Mr. Lohscheller holds a master's degree in marketing management from Brunel University and a bachelor's degree in business administration from Osnabrück University of Applied Sciences.

Qualifications

We believe Mr. Lohscheller is qualified to serve on our board of directors due to his extensive leadership and management experience at various automotive manufacturing companies, including his experience serving as our President and Chief Executive Officer.

**Defendant Girsky**

34.     Defendant Girsky has served as Nikola's CEO since August 2023. Previously, Defendant Girsky served as President, CEO and a Company director of VectoIQ, Nikola's predecessor company, from January 2018 to June 2020. Defendant Girsky also serves as a member of the Sustainability, Nominating and Corporate Governance Committee. Additionally, Defendant Girsky is currently overseeing key financial leadership while Nikola searches for a replacement CFO. According to the 2023 Proxy Statement, as of April 10, 2023, Defendant Russell beneficially owned 1,847,541 shares of the Company's common stock. Given that the price per share of the Company's common stock at the close of trading on April 10, 2023 was $1.19, Defendant Girsky owned approximately $2,198,573.79 worth of Nikola common stock as of that date.

35.     Nikola's 2023 Proxy Statement states the following about Defendant Girsky:

Biographical information

Stephen J. Girsky served as President, Chief Executive Officer and a director of VectorIO, our predecessor company, from January 2018 to June 2020 and continues to serve on our board of directors following the completion of the Business Combination. Mr. Girsky is a Managing Partner of VectorQ, LLC, an independent advisory and investment bank firm based in New York. Mr. Girsky served in a number of capacities at General Motors Company (NYSE: GM), a vehicle manufacturer ("General Motors"), from November 2009 until July 2014, including Vice Chairman, having responsibility for global corporate strategy, new business development, global product planning and program development, global connected consumer/OnStar, and GM Ventures LLC, global research & development and global purchasing and supply chain. Mr. Girsky also served on General Motors' board of directors following its emergence from bankruptcy in June 2009 until June 2016. Mr. Girsky currently serves on the board of directors of Brookfield Business Partners Limited, the general partner of Brookfield Business Partners, L.P. (NYSE: BBU; TSX; BBU.UN), a private equity company. Mr. Girsky received a bachelor

of science degree in mathematics from the University of California, Los Angeles and an M.B.A. from Harvard University

Qualifications

We believe Mr. Girsky is qualified to serve on our board of directors due to his extensive leadership and business experience, including his experience as a director of numerous public companies, together with his background in finance and public company governance.

**Defendant Brady**

Defendant Brady served as Nikola's CFO from June 2020 until April 7, 2023. According to the Company's 2023 Proxy Statement, as of April 10, 2023, Defendant Brady beneficially owned 11,212,834 shares of the Company's common stock, representing 1.7% of the Company's total outstanding common stock as of that date. Given that the price per share of the Company's common stock at the close of trading on April 10, 2023 was $1.19, Defendant Brady beneficially owned $13,343,272.46 worth of Nikola common stock as of that date.

36.     For Fiscal Year 2022, Defendant Brady received $2,848,693 in total compensation from the Company. This included $164,432 in salary compensation and $2,684,270 in stock awards.

37.     The proxy statement the Company filed on Schedule 14A with the SEC on April 20, 2022 (the "2022 Proxy Statement"), states the following about Brady:

Kim J. Brady has serves as our Chief Financial Officer since June 2020, and prior to that, served as Chief Financial Officer and Treasurer of Legacy Nikola from November 2017 to June 2020. Prior to joining Legacy Nikola, Mr. Brady served as senior managing director and partner of Solic Capital Management, LLC, a middle market financial advisory and principle investment firm, from 2012 to October 2017. Mr. Brady was co-head of Solic's special Situations Fund that invested across all levels of capital structure. Mr. Brady received a bachelor of science degree in management, finance and accounting from Brigham Young University and an MBA from Northwestern University's Kellogg Graduate School of Management.

**Defendant Pasterick**

38.     Defendant Pasterick served as Nikola's CFO from April 2023 until December 1, 2023. Defendant Pasterick was promoted to CFO following Defendant Brady's retirement in April 2023.

39.     During the Relevant Period, when the Company materially misstated information to the investing public to keep the stock price inflated, and before the scheme was exposed, Defendant Pasterick made the following sales of Company stock:

| Date | Number of Shares | Price Per Share | Proceeds |
|---|---|---|---|
| August 10, 2023 | 15,726 | $1.96 | $30,791 |
| September 6, 2023 | 6,709 | $1.12 | $7,520 |
| TOTAL | 22,435 | - | $38,311 |

40.     Her lucrative insider sales, made with knowledge of material non-public information before the material misstatements and omissions were exposed, demonstrates his motive in facilitating and participating in the scheme.

41.     Nikola's 2023 Proxy Statement states the following about Defendant Pasterick:

Anastasiya ("Stasy") Pasterick, age 36, has served as our Chief Financial Officer since April 2023, and as Vice President, Corporate Controller from May 2019 to April 2023. Prior to that, Ms. Pasterick served as Corporate Controller of nLight (Nasdaq: LASR), a semiconductor and fiber laser technology company, from October 2015 to May 2019. From May 2014 to October 2015, Ms. Pasterick served as the Director of Accounting Operations of Erickson, an aviation services company. Prior to that, Ms. Pasterick served as an Audit Manager, among other roles, at KPMG LLP, an audit, tax and advisory firm, from January 2008 to May 2014. Ms. Pasterick is a certified public accountant and received a bachelor of science degree in business administration, accounting from Portland State University.

**Defendant Forester De Rothschild**

42.     Defendant Forester De Rothschild served as a Company director from February 2022 to June 2023. Defendant Forester De Rothschild did not stand for re-election at the Annual Meeting in 2023. While serving as a member of the Board, Defendant Forester De Rothschild

served as Chair of the Sustainability, Nominating and Corporate Governance Committee. According to the 2023 Proxy Statement, as of April 10, 2023, Defendant Forester De Rothschild owned beneficially owned 228,860 shares of the Company's common stock. Given that the price per share of the Company's common stock at the close of trading on April 10, 2023 was $1.19, Defendant Forester De Rothschild beneficially owned approximately $272,343.40 worth of Nikola common stock as of that date.

43.    For Fiscal Year 2022, Defendant Forester De Rothschild received $213,275 in total compensation, which consisted entirely of stock awards.

44.    Nikola's 2023 Proxy Statement, states the following about Defendant Forester De Rothschild:

Biographical Information

Lynn Forester de Rothschild serves as a co-founding and managing partner of Inclusive Capital Partners, an investment manager, since 2000. Ms. de Rothschild also serves as the Chair of E.L. Rothschild LLC, a private investment company with investments in media, information technology, agriculture, financial services, and real estate worldwide, where she served as Chief Executive Officer from June 2003 until August 2020. Since 2000, Ms. de Rothschild also serves as a member of the board of directors and currently serves on the nominating and environmental social governance committee of Estee Lauder Companies Inc. (NYSE: EL), an American multinational manufacturer and marketer of skincare, makeup, fragrance and hair care products. Ms. de Rothschild has also served as a director of The Economist Newspaper Limited, a media company, as well as the board of directors of Gulfstream, General Instrument, Weather Central and Bronfman-Rothschild. Ms. de Rothschild serves on the board and executive committee of The Peterson Institute for International Economics, an American think tank based in Washington, D.C. Ms. de Rothschild also serves as the founder and chair of the Coalition for Inclusive Capitalism, a global non-profit organization that works with leaders to make capitalism inclusive and its benefits more widely and equitably shared, and as the founder and co-chair of the Council for Inclusive Capitalism. Ms. de Rothschild holds a bachelor's degree from the Pomona College and a J.D. from Columbia University.

Qualifications

We believe Ms. Forester is qualified to serve on our board of directors due to her extensive business experience and experience serving on public company boards,

including serving on nominating and environmental and social governance committees.

**Defendant Mansuetti**

45.     Defendant Mansuetti is a current Company director and has served on Nikola's Board since June 2020. Defendant Mansuetti serves as a member of the Audit Committee. According to the 2023 Proxy Statement, as of April 10, 2023, Defendant Mansuetti beneficially owned 58,597 shares of the Company's common stock. Given that the price per share of the Company's common stock at the close of trading on April 10, 2023 was $1.19, Defendant Mansuetti beneficially owned approximately $69,730.43 worth of Nikola common stock as of that date.

46.     For Fiscal Year 2022, Defendant Mansuetti received $167,827 in total compensation, which consisted entirely of stock awards.

47.     Nikola's 2023 Proxy Statement says the following about Defendant Mansuetti:

Biographical Information

Michael L. Mansuetti has served as a member of our board of directors since June 2020, and prior to that, a member of the board of directors of Nikola Corporation, a Delaware corporation ("Legacy Nikola"), prior to the completion of our business combination with VectoIQ Acquisition Corp. ("VectoIQ") on June 3, 2020 (the "Business Combination"), from September 2019 to June 2020. Since July 2012, Mr. Mansuetti has been the President of Robert Bosch LLC, an automotive component supply company. Mr. Mansuetti received a bachelor of science degree in mechanical engineering from Clemson University.

Qualifications

We believe Mr. Mansuetti is qualified to serve on our board of directors due to this expertise in advanced manufacturing, operations, and management and extensive leadership experience.

**Defendant Marx**

15

48.     Defendant Marx served as a Company Director from June 2020 until June 2023 when he retired. While serving as a member of the Board, Defendant Marx was a member of the Compensation Committee.

49.     Defendant Marx did not receive any compensation for Fiscal Year 2022. Additionally, Defendant Marx did not own any shares of Nikola stock as of April 10, 2023.

50.     Nikola's 2023 Proxy Statement states the following about Defendant Marx:

Biographical Information

Gerrit A. Marx has served as a member of our board of directors since June 2020, and prior to that, a member of Legacy Nikola's board of directors from September 2019 to June 2020. Mr. Marx has served as Chief Executive Officer of Iveco Group N.V. since January 2022 and as Chief Executive Officer of Iveco S.p.A. ("Iveco") since January 2019, a commercial goods manufacturing company, and as President of commercial and specialty vehicles of CNH Industrial N.V. ("CNHI") (Nasdaq: CNHI), an industrial goods manufacturing company, from January 2019 until December 2021. Prior to joining CNHI, Mr. Marx served as an operating partner at Bain Capital, a global private equity firm, from December 2012 to December 2018. Mr. Marx served as interim Chief Executive Officer of Wittur Holding GmbH, an elevator component manufacturing company, from May 2017 to March 2018 and as interim President of power tools of Apex Tool Group, LLC, a hand and power tool manufacturing company, from November 2014 to April 2015. Mr. Marx received a master of engineering equivalent in mechanical engineering and an M.B.A. equivalent from RWTH Aachen University, Germany, and a doctorate in business administration from Cologne University, Germany.

Qualifications

We believe Mr. Marx is qualified to serve on our board of directors due to his extensive experience in the automobile industry as well as his experience in finance.

**Defendant Petrovich**

51.     Defendant Petrovich is a current Company director and has served on the Board since December 2020. Defendant Petrovich serves as Chair of the Compensation Committee. According to the 2023 Proxy Statement, as of April 10, 2023, Defendant Petrovich owned 59,921 shares of the Company's common stock. Given that the price per share of the company's common stock at the close of trading on April 10, 2023 was $1.19, Defendant Petrovich beneficially owned approximately $71,305.99 worth of Nikola common stock as of that date.

52.     During the fiscal year ended on December 31, 2022, Defendant Petrovich received

an annual compensation of $176,178 in stock awards.

53.     Nikola's 2023 Proxy Statement stated the following about Defendant Petrovich:

Biographical Information

Mary L. Petrovich has served as a member of our board of directors since December
2020. She has served as an operating executive at the Carlyle Group, a global asset
management company, since June 2011, and as an advisor to American Security
Partners, a private equity firm, since September 2013. Ms. Petrovich served in
various capacities at AxleTech International, a supplier of off-highway and
specialty vehicle drive train systems and components, as Executive Chair from
December 2014 through July 2019, following its acquisition by General Dynamics,
as General Manager from 2008 to 2011, and as Chairman and Chief Executive
Officer, from 2001 to 2008. Ms. Petrovich has served on the board of directors of
Woodward, Inc. (Nasdaq: WWD), a designer, manufacturer, and service provider
of control solutions for the aerospace and industrial markets, since 2002. Ms.
Petrovich served as a director of WABCO Holdings Inc. (NYSE: WBC), a global
supplier of electronic, mechanical, electro-mechanical and aerodynamic products
for manufacturers of commercial trucks, buses and trailers, and passenger cars,
from November 2011 to December 2018. Ms. Petrovich also serves as chairman of
the board of DealerShop, North America's largest buying group for car dealers and
a private company, and Traxen, a private company focused on developing useful
combination of technologies to promote safe driving, efficient fuel use and to
provide beneficial and actionable big data to heavy-duty trucking industry. Ms.
Petrovich received a bachelor's degree in engineering from the University of
Michigan, and an M.B.A. from Harvard University.

Qualifications

We believe Ms. Petrovich is qualified to serve on our board of directors due to her
extensive experience in the automotive industry, and in particular, the trucking
industry.

**<u>Defendant Shindler</u>**

54.     Defendant Shindler is a current Company director and has served on Nikola's

Board since September 2020. Defendant Shindler serves as the Chair of the Audit Committee.

According to the 2023 Proxy Statement, as of April 10, 2023, Defendant Shindler beneficially

owned 419,121 shares of the Company's common stock. Given that the price per share of the

Company's common stock at the close of trading on April 10, 2023 was $1.19, Defendant Shindler

beneficially owned approximately $498,753.99 worth of Nikola Common stock as of that date.

55.     For Fiscal Year 2022, Defendant Shindler received $176,178 in total compensation

from the Company, which consisted entirely of stock awards.

56.     Nikola's 2023 Proxy Statement says the following about Defendant Shindler:

Biographical Information

Steven M. Shindler has served as a member of our board of directors since
September 2020. He served as Chief Financial Officer of VectoIQ from January
2018 through the completion of the Business Combination. Mr. Shindler is a
director of NII Holdings, Inc., a holding company that previously owned providers
of wireless communication services under the Nextel brand in Latin America. Mr.
Shindler served as Chief Executive Officer of NII from 2012 to August 2017 as
well as from 2000 to 2008. Mr. Shindler guided NII through a financial
restructuring that included sales of its core businesses in Mexico, Peru, Argentina
and Chile, as well as a voluntary petition seeking relief under Chapter 11 of the
U.S. Bankruptcy Code in September 2014, where he continued in the Chief
Executive Officer role following its emergence from bankruptcy in June 2015. Mr.
Shindler served as Executive Vice President and Chief Financial Officer of Nextel
Communications, Inc., a wireless service operator, from 1996 to 2000. Prior to
joining Nextel, Mr. Shindler was Managing Director of Communications Finance
at The Toronto Dominion Bank. Mr. Shindler is also a founding partner of RIME
Communications Capital, a firm that has invested in early stage media, tech and
telco companies. Mr. Shindler received a bachelor of arts degree in economics from
the University of Michigan and an M.B.A. from Cornell University.

Qualifications

We believe Mr. Shindler is qualified to serve on our board of directors due to his
corporate financial management and strategic planning experience, including
financial and operational knowledge and experience.

**Defendant Smith**

57.     Defendant Smith is a current Company director and has served on Nikola's Board

since November 2020. Defendant Smith currently serves as a member of the Audit Committee and

the Sustainability, Nominating and Corporate Governance Committee. According to the 2023

Proxy Statement, as of April 10, 2023, Defendant Smith beneficially owned 43,921 shares of the

Company's common stock. Given that the price per share of the Company's common stock at the close of trading in April 10, 2023 was $1.19, Defendant Smith beneficially owned approximately $52,265.99 worth of Nikola common stock as of that date.

58.     For Fiscal Year 2022, Defendant Smith received $167,827 in total compensation, which consisted entirely of stock awards.

59.     Nikola's 2023 Proxy Statement stated the following about Defendant Smith:

Biographical Information

Bruce L. Smith has served as a member of our board of directors since November 2020. He has served as chairman and chief executive officer of Detroit Manufacturing Systems LLC, a Tier 1 component manufacturer for global automotive brands, since August 2018. Prior to joining Detroit Manufacturing Systems LLC, Mr. Smith served as President and Chief Executive Officer of BTM Company, a global leader of precision engineered tooling and production equipment, from July 2015 to July 2018. Mr. Smith also served as President and Chief Executive Officer of Elyria & Hodge Foundries, a company that produces complex gray and ductile iron castings, from April 2009 to July 2015, President and Chief Operating Officer of Guilford Mills, a high-tech performance fabrics supplier, from May 2005 to April 2009, President and Chief Executive Officer of Piston Group, an automotive supplier, from 2003 to 2005, and president and chief operating officer of United Plastics Group, an international plastics manufacturer, from 2001 to 2003. Mr. Smith received a bachelor's degree in mechanical engineering from Carnegie Mellon University, and an M.B.A. from Harvard University.

Qualifications

We believe Mr. Smith is qualified to serve on our board of directors due to his extensive experience in the manufacturing industry.

**Defendant Thompson**

60.     Defendant Thompson served as a Company director from June 2020 until October 2022. While serving as a Company director, Defendant Thompson was a member of the Compensation Committee. According to the 2022 Proxy Statement, as of April 4, 2022, Defendant Thompson beneficially owned 13,180,103 shares of the Company's common stock, representing 3.1% of the Company's total outstanding common stock as of that date. Given that the price per

share of the Company's common stock at the close of trading on April 4, 2022 was $10.03, Defendant Thompson beneficially owned approximately $132,196,433.09 worth of Nikola common stock as of that date.

61.     Defendant Thompson departed from the Board of Directors on October 3, 2022, and forfeited the stock award he was granted in 2022.

62.     Nikola's 2022 Proxy Statement stated the following about Defendant Thompson:

Biographical Information

DeWitt C. Thompson, V has served as a member of our board of directors since June 2020, and prior to that, a member of Legacy Nikola's board of directors from July 2017 to June 2020. Mr. Thompson has served as Chairman and Chief Executive Officer of Thompson Machinery Commerce Corporation, a Caterpillar distributor in Tennessee and Mississippi, servicing heavy machinery, on-highway trucks, and power systems, since 1995. He has also served as Chairman for Aries Clean Energy since April 2010. Mr. Thompson founded PureSafety in 1999 and served as Chairman until the purchase of that company by Underwriters Laboratories in 2011. Mr. Thompson is also an owner and director of the Nashville Predators and sits on the board of directors for Wealth Access. He received a bachelor of science degree from the engineering school at Vanderbilt University.

Qualifications

We believe Mr. Thompson is qualified to serve on our board of directors due to his extensive experience in renewable energy and machinery.

**Defendant Vesey**

63.     Defendant Vesey currently serves as a Company director and has served as a Company director since October 2022. Defendant Vesey serves as a member of the Compensation Committee. According to the 2023 Proxy Statement, as of April 10, 2023, Defendant Vesey beneficially owned 22,541 shares of the Company's common stock. Given that the price per share of the Company's common stock at the close of trading on April 10, 2023 was $1.19, Defendant Russell beneficially owned approximately $26,823.79 worth of Nikola common stock as of that date.

20

64.     For Fiscal Year 2022, Defendant Vesey received $69,201 in total compensation, which consisted entirely of stock awards.

65.     Nikola's 2023 Proxy Statement states the following about Defendant Vesey:

Biographical Information

Andrew M. Vesey has served as a member of our board of directors since October 2022. Mr. Vesey has served as President and Chief Executive Officer of Fortescue Industries, a global green energy company with a portfolio of renewable energy and green hydrogen projects, since June 2022. Prior to that, Mr. Vesey served as President of Smart eMobility, a service provider within the sustainable energy ecosystem, from February 2022 to June 2022, as President and Chief Executive Officer of Pacific Gas and Electric Company (NYSE: PCG), an electric and gas utility company, from August 2019 to August 2020 and as Chief Executive Officer and Managing Director of AGL Energy Limited (ASX: AGL), an electric and gas retailer, from February 2015 to December 2022. Mr. Vesey received a bachelor's degree in economics and a bachelor of science degree in mechanical engineering from Union College and a master of science degree from New York University.

Qualifications

We believe Mr. Vesey is qualified to serve on our board of directors due to his extensive experience in the renewable energy and utility industries.

## FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS

66.     By reason of their positions as officers and/or directors of Nikola and because of their ability to control the business and corporate affairs of Nikola, the Individual Defendants owed Nikola and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and were/are required to use their utmost ability to control and manage Nikola in a fair, just, honest, and equitable manner. The Individual Defendants were/are required to act in furtherance of the best interests of Nikola and its shareholders so as to benefit all shareholders equally.

67.     Each director and officer of the Company owes to Nikola and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the Company and in the use and preservation of its property and assets and the highest obligations of fair dealing.

68.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of Nikola, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

69.     To discharge their duties, the officers and directors of Nikola were required to exercise reasonable and prudent supervision over the management, policies, controls, and operations of the Company.

70.     Each Individual Defendant, by virtue of his or her position as a director and/or officer owed to the Company and to its shareholders the highest fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and/or officers of Nikola, the absence of good faith on their part, or a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company. The conduct of the Individual Defendants who were also officers and/or directors of the Company has been ratified by the remaining Individual Defendants who collectively comprised Nikola's Board at all relevant times.

71.     As senior executive officers and/or directors of a publicly-traded company whose common stock was registered with the SEC pursuant to the Exchange Act and traded on the NASDAQ, the Individual Defendants had a duty to prevent and not to effect the dissemination of inaccurate and untruthful information with respect to the Company's financial condition, performance, growth, operations, financial statements, business, products, management, earnings, internal controls, and present and future business prospects, including the dissemination of false

information regarding the Company's business, prospects, and operations, and had a duty to cause the Company to disclose in its regulatory filings with the SEC all those facts described in this Complaint that it failed to disclose, so that the market price of the Company's common stock would be based upon truthful and accurate information. Further, they had a duty to ensure that the Company remained in compliance with all applicable laws.

72.     To discharge their duties, the officers and directors of Nikola were required to exercise reasonable and prudent supervision over the management, policies, practices, and internal controls of the Company. By virtue of such duties, the officers and directors of Nikola were required to, among other things:

(a)     ensure that the Company was operated in a diligent, honest, and prudent manner in accordance with the laws and regulations of Delaware, Arizona, and the United States, and pursuant to Nikola's own Code of Business Conduct and Ethics (the "Code of Conduct");

(b)     conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c)     remain informed as to how Nikola conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices;

(d)     establish and maintain systematic and accurate records and reports of the business and internal affairs of Nikola and procedures for the reporting of the business and internal affairs to the Board and to periodically investigate, or cause independent investigation to be made of, said reports and records;

(e)     maintain and implement an adequate and functioning system of internal legal, financial, and management controls, such that Nikola's operations would comply with all applicable laws and Nikola's financial statements and regulatory filings filed with the SEC and disseminated to the public and the Company's shareholders would be accurate;

(f)     exercise reasonable control and supervision over the public statements made by the Company's officers and employees and any other reports or information that the Company was required by law to disseminate;

(g)     refrain from unduly benefiting themselves and other Company insiders at the expense of the Company; and

(h)     examine and evaluate any reports of examinations, audits, or other financial information concerning the financial affairs of the Company and to make full and accurate disclosure of all material facts concerning, *inter alia*, each of the subjects and duties set forth above.

73.     Each of the Individual Defendants further owed to Nikola and the shareholders the duty of loyalty. The duty of loyalty requires that the Individual Defendants act in favor of Nikola's and Nikola's shareholder's interest over their own while conducting the affairs of the Company, and refrain from using their position, influence, or knowledge of Nikola's affairs to gain personal advantage.

74.     At all times relevant hereto, the Individual Defendants were the agents of each other and Nikola and were at all times acting within the course and scope of such agency.

75.     Because of their advisory, executive, managerial, and directorial positions with Nikola, each of the Individual Defendants had access to adverse, non-public information about the Company.

76.     The Individual Defendants, because of their positions of control and authority, were able to, and did, directly or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by Nikola.

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

77.     In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their wrongdoing. The Individual Defendants caused the Company to conceal the true facts as alleged herein. The Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

78.     The purpose and effect of the conspiracy, common enterprise, and/or common course of conduct was, among other things, to: (i) facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty, unjust enrichment, waste of corporate assets, gross mismanagement, abuse of control, and violations of the Exchange Act; (ii) conceal adverse information concerning the Company's operations, financial condition, legal compliance, future business prospects, and internal controls; and (iii) artificially inflate the Company's stock price.

79.     The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company purposefully or recklessly to conceal material facts, fail to correct such misrepresentations, and violate applicable laws. In furtherance of this plan, conspiracy, and course of conduct, the Individual Defendants collectively and individually took the actions set forth herein. Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants who is a director of Nikola was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

80.     Each of the Individual Defendants aided, abetted, and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each of the Individual Defendants acted with actual or constructive knowledge of the primary wrongdoing, either took direct part in, or substantially assisted in the accomplishment of that wrongdoing, and was or should have been aware of his or her overall contribution to and furtherance of the wrongdoing.

81.     At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of Nikola and was at all times acting within the course and scope of such agency.

### NIKOLA'S CODE OF CONDUCT

82.     The Company's Code of Business Conduct and Ethics (the "Code of Conduct"), provides that "all of the employees of the Company are subject to the following additional specific policies contained in this Code."

83.     The Code of Conduct provides, as to Nikola's "Compliance with Law, Rules and Regulations," that:

> Company policy requires that our business activities comply with both the letter and the spirit of all applicable laws, rules and regulations. Although not all employees are expected to know the details of these laws, it is important to know enough to determine when to seek advice from supervisors, managers or other appropriate personnel.

84.     The Code of Conduct provides, as to "Conflicts of Interest," that:

> A "conflict of interest" arises when a person's loyalties or actions are divided between the interests of the Company and those of another, such as a competitor, supplier or customer, or personal business. A conflict of interest can arise when an employee takes actions or has interests that may make it difficult to perform his or her work for the Company objectively and effectively. A conflict of interest may also arise when an individual, or a member of his or her family, receives an improper personal benefit as a result of his or her position in, or relationship with, the Company. Breach of confidentiality obligations can also give rise to a conflict

26

of interest. Moreover, the appearance of a conflict of interest alone can adversely affect the Company and its relations with customers, suppliers and employees.

Employees are expected to use good judgment, to adhere to high ethical standards and to avoid situations that create an actual or potential conflict of interest. It is almost always a conflict of interest for employees to work simultaneously for a competitor, customer or supplier.

A conflict of interest can also arise with respect to employment of relatives and persons with close personal relationships. If an employee or someone with whom an employee has a close relationship (e.g., a family member or close companion) has a financial or employment relationship with an actual or potential competitor, supplier or customer, the employee must disclose this fact in writing to the Chief Financial Officer of the Company.

85.     The Code of Conduct provides, as to "Fair Dealing," that:

Although the prosperity of our Company depends on our ability to outperform our competitors, the Company is committed to achieving success by fair and ethical means. We seek to maintain a reputation for honesty and fair dealing among our competitors and the public alike. In light of this aim, dishonest, unethical or illegal business practices are prohibited, including, without limitation, corruption, bribery, kickbacks, extortion, embezzlement, or other similar practices. An exhaustive list of unethical practices cannot be provided. Instead, the Company relies on the judgment of each individual to avoid such practices. Furthermore, each employee should endeavor to deal fairly with the Company's customers, suppliers, competitors and employees. No employee should take unfair advantage of anyone through manipulation, concealment, abuse of privileged information, misrepresentation of material facts, or any other unfair business practice.

86.     The Code of Conduct states, as to "Insider Trading," that:

You are not permitted to use, share or disseminate confidential information for stock trading purposes or for any other purpose except the conduct of our business. To use confidential information for personal financial benefit or to "tip" others who might make an investment decision on the basis of this information is not only unethical, but is also illegal. You are expected to comply with the Company's Insider Trading Policy.

87.     The Code of Conduct states that "[t]he Company requires honest and accurate recording and reporting of information in order to make responsible business decisions[,]" stating:

If you use a business expense account, expenses to be reimbursed must be documented and recorded accurately. If you are not sure whether an expense is appropriate, ask your supervisor. All of the Company's books, records, accounts and financial statements must be maintained in reasonable detail, must

appropriately reflect the Company's transactions and must conform both to applicable legal requirements and to the Company's system of internal controls. All Company business data, records and reports must be prepared truthfully and accurately. The Company's business records must be maintained for the periods specified in the Company's applicable record retention policies.

Employees who contribute to or prepare the Company's financial statements, public filings, submissions or communications should do so in accordance with the following guidelines:

> • All accounting records, as well as reports produced from those records, must be prepared in accordance with the laws of each applicable jurisdiction.

> • All records must fairly and accurately reflect the transactions or occurrences to which they relate.

> • All records must fairly and accurately reflect, in reasonable detail, the Company's assets, liabilities, revenues and expenses.

> • The Company's accounting records must not contain any false or intentionally misleading entries.

> • No transactions should be intentionally misclassified as to accounts, departments or accounting periods.

> • All transactions must be supported by accurate documentation in reasonable detail and recorded in the proper account and in the proper accounting period.

> • No information should be concealed from independent auditors.

> • Compliance with the Company's system of internal accounting controls is required.

Business records and communications often become public, and employees should avoid exaggeration, derogatory remarks, guesswork or inappropriate characterizations of people and companies that can be misunderstood. This applies equally to e-mail, internal memos and formal reports.

88.    With respect to reporting suspected violations of the Code of Conduct, the Code of

Conduct maintained that:

Employees are responsible for being aware of the corporate policies applicable to their activities and to comply with them fully. If you become aware of illegal

28

activity, unethical behavior, a violation of this Code or believe that a violation may take place in the future, you must promptly report the matter. Failure to report a known violation allows misconduct to go unremedied and is itself grounds for discipline.

89.     The Code of Conduct further stated, in a section titled, "Accountability for Adherence to this Code," that:

The Board of Directors shall determine, or designate appropriate persons to determine, appropriate actions to be taken in the event of violations of this Code. Such actions shall be reasonably designed to deter wrongdoing and to promote accountability for adherence to this Code, and shall include written notices to the individual involved that the Board of Directors or its designee has determined that there has been a violation, and may include censure by the Board of Directors or its designee, demotion or re-assignment of the individual involved, suspension with or without pay (as determined by the Board of Directors or its designee) and termination of the individual's employment or other service.

90.     In violation of the Code of Conduct, the Individual Defendants conducted little, if any, oversight of the Company's engagement in the Individual Defendants' scheme to issue materially false and misleading statements to the public and to facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty, unjust enrichment, abuse of control, gross mismanagement, and violations of Sections 10(b), 14(a), and 21D of the Exchange Act.  In violation of the Code of Conduct, the Individual Defendants consciously disregarded their duties to comply with the applicable laws and regulations, engage in fair dealing, avoid using corporate opportunities for personal gain, avoid conflicts of interest, appropriately maintain the Company's books, records, accounts, and financial statements and make accurate filings with the SEC.

## NIKOLA'S CODE OF ETHICS

91.     The Company also maintains a Code of Ethics for Senior Financial Officers (the "Code of Ethics") specifically targeted to "the Executive Chairman, the Chief Executive Officer, the President, the Chief Operating Officer, [and] the Chief Financial Officer."

92.     The Code of Ethics provides that:

The Officers are responsible for full, fair, accurate, timely and understandable disclosure in the reports and documents that the Company files with, or submits to, the Securities and Exchange Commission and in other public communications made by the Company. It is the responsibility of each Officer to promptly bring to the attention of the Chair of the Audit Committee (the "Audit Chair") of the Board of Directors (the "Board") any material information of which he or she may become aware that is omitted from or misstated in the disclosures made by the Company in its public filings.

93.     The Code of Ethics requires the Individual Defendants to do the following, in relevant part:

- Each Officer shall promptly bring to the attention of the Audit Chair any information he or she may have concerning (a) significant deficiencies in the design or operation of internal controls that could adversely affect the Company's ability to record, process, summarize and report financial data or (b) any fraud, whether or not material, that involves management or other employees who have a significant role in the Company's financial reporting, disclosures or internal control over financial reporting.

- Each Officer shall act with honesty and integrity in the performance of his or her duties and shall comply with laws, rules and regulations of federal, state and local governments and other private and public regulatory agencies that affect the conduct of the Company's business and the Company's financial reporting.

- Each Officer shall promptly bring to the attention of the Audit Chair any information he or she may have concerning evidence of a material violation of the securities or other laws, rules or regulations applicable to the Company and the operation of its business, by the Company or any agent thereof, or any violation of this Code.

- Each Officer shall maintain high standards of honest and ethical conduct, including the ethical handling of actual or apparent conflicts of interest between personal and professional relationships.

94.     The Code of Ethics also states the following with respect to violations of the Code of Ethics:

Violations of this Code or any direction given by management or the Board in order to effect the provisions, goals and aims of this Code will be viewed as a severe disciplinary matter that may result in disciplinary action, including termination of employment.

95.     In violation of the Code of Ethics, the Individual Defendants (as key officers and as members of the Company's Board) conducted little, if any, oversight of the Company's engagement in the Individual Defendants' scheme to issue materially false and misleading statements to the public and to facilitate and disguise the Individual Defendants' violations of law, including, but not limited to, violations of Sections 14(a) of the Exchange Act, breaches of fiduciary duty, gross mismanagement, and unjust enrichment. In violation of the Code of Ethics, the Individual Defendants consciously disregarded their duties to comply with the applicable laws and regulations, engage in fair dealing, avoid using corporate opportunities for personal gain, avoid conflicts of interest, appropriately maintain the Company's books, records, accounts, and financial statements, and make accurate filings with the SEC.

## AUDIT COMMITTEE CHARTER

96.     The Company also maintains an Audit Committee Charter. The purpose of the Audit Committee is "[t]o assist the Board in Oversight of:

- The integrity of the Company's financial statements,

- The Company's compliance with legal and regulatory requirements,

- The independent auditor's qualifications, independence and performance,

- The organization and performance of the Company's internal audit function,

- The Company's internal accounting and financial controls,

- The Company's treasury and finance matters, and

- The Company's risk management and assessment pertaining to the financial, accounting and tax matters of the Company, including data privacy and security."

97.    The Audit Committee further states its purpose in the Audit Committee Charter as "[t]o provide to the Board such information and materials as it may deem necessary to make the Board aware of significant financial matters that require the attention of the Board."

98.    The Audit Committee Charter further states that "[t]he function of the Audit Committee is primarily one of oversight."

99.    Regarding the principal recurring responsibilities of the Audit Committee, the Audit Committee Charter states the following: "[t]he Audit Committee shall review and discuss the following with management…:

- The scope and timing of the annual audit of the Company's financial statements.

- The Company's annual audited and quarterly financial statements and annual and quarterly reports on Forms 10-K and 10-Q (when the Company is required to comply with such reporting obligations), including the disclosures in "Management's Discussion and Analysis of Financial Condition and Results of Operations", and recommend to the Board, if deemed appropriate, whether the audited financial statements and "Management's Discussion and Analysis of Financial Condition and Results of Operations" should be included in the Company's Form 10-K, in accordance with the rules and regulations of the SEC.

- The results of the independent audit and quarterly reviews, and the independent auditor's opinion on the annual financial statements.

- The reports and certifications regarding internal control over financial reporting and disclosure controls and procedures.

- Major issues regarding accounting principles and financial statement presentations, including any significant changes in the Company's selection or application of accounting principles.

- Analysis prepared by management or the independent auditor setting forth significant financial reporting issues and judgments made in connection with the preparation of the financial statements, including analysis of the effects of alternative generally accepted accounting principles… methods on the financial statements.

- The effect of regulatory and accounting initiatives on the Company's financial statements.

- Any significant changes required or taken in the audit plan as a result of any significant control deficiency or material weakness.

- Any problems or difficulties the independent auditor encountered in the course of its audit work, including any restrictions on the scope of the auditor's activities or on access to requested information, and management's response.

- Any significant disagreements between management and the independent auditor and management's response."

100.    Regarding legal and regulatory compliance, the Audit Committee Charter states:

"The Audit Committee shall review and discuss with management and the independent auditor (i) the overall adequacy and effectiveness of the Company's legal, regulatory and ethical compliance programs, including the Company's Code of Business Conduct and Ethics, Code of Ethics for Senior Financial Officers, Insider Trading Policy, the Foreign Corrupt Practices Act, and compliance with export control regulations and make a recommendation to the Board of Directors with respect to the disposition of any proposed waiver and review any potential ethics violations brought to the attention of the Audit Committee and (ii) reports regarding compliance with applicable laws, regulations and internal compliance programs in each case to the extent pertaining to financial, accounting and/or tax matters. The Audit Committee shall discuss with management and the independent auditor any correspondence with regulators or governmental agencies and any published reports that raise material issues - 6 - regarding the Company's financial statements or accounting policies. The Audit Committee shall discuss with the Company's Legal Department, or outside legal counsel, as applicable, legal matters that may have a material impact on the financial statements or the Company's compliance procedures that pertain to financial, accounting or tax matters of the Company."

101.    In violation of the Audit Committee Charter, the Individual Defendants sitting on the Audit Committee during the Relevant Period failed to adequately exercise their risk management and risk assessment functions and failed to ensure adequate Board oversight of the Company's internal control over financial reporting, disclosure controls and procedures, and the Code of Conduct.

## SUSTAINABILITY, NOMINATING AND CORPORATE GOVERNANCE COMMITTEE CHARTER

102.     Nikola also maintains a Sustainability, Nominating and Corporate Governance Committee (the "Governance Committee") Charter. The purpose of this committee is to:

- Assist the Board in identifying and evaluating individuals who are qualified to become members of the Board in accordance with criteria approved by the Board and select, or recommend to the Board that the Board select, specified individuals as the director nominees for each meeting of stockholders at which directors are to be elected.

- Recommend members for each Board committee.

- Develop, maintain and recommend to the Board corporate governance policies, including environmental and social governance ("ESG") matters applicable to the Company.

- Oversee the evaluation of the Board.

103.     With respect to corporate governance, the Governance Committee Charter states, in relevant part:

- Oversee the Company's corporate governance practices, including reviewing and recommending to the Board for approval any changes to the Company's corporate governance framework, including its amended and restated certificate of incorporation and amended and restated bylaws.

- Oversee and discuss with management, as appropriate, the policies, programs, practices, and reports concerning ESG, including sustainability, environmental protection, community and social responsibility, and human rights.

- Develop, subject to approval by the Board, a process for an annual evaluation of the Board and its committees, and to oversee the conduct of this annual evaluation.

                                        ***

- Periodically evaluate the Company's risk management process and system in light of the nature of the material risks the Company faces and the adequacy of the Company's policies and procedures designed to address risk, and recommend to the Board any changes deemed appropriate by the Governance Committee

104.    In violation of the Governance Committee Charter, the Individual Defendants sitting on the Governance Committee during the Relevant Period failed to adequately exercise their risk management and risk assessment functions and failed to ensure adequate Board oversight of the Company's corporate governance practices, risk management process, and the Code of Conduct.

## INDIVIDUAL DEFENDANTS' MISCONDUCT

### Background

105.    Nikola purports to operate in the zero-emissions vehicle design market. The Company claims to be "an industry leading disrupter" that designs and manufactures zero-emission battery-electric and hydrogen-electric vehicles, electric vehicle drivetrains, vehicle components, energy storage systems, and hydrogen station infrastructure.

106.    One of Nikola's primary products is the Nikola Tre Class 8 truck, a BEV that "integrates [the Company's] electrified propulsion, technology, controls and infotainment" and "is expected to be one of the first zero emission Class 8 trucks to market."

107.    On June 23, 2023, a Nikola Tre BEV caught fire at Nikola headquarters, with the fire ultimately spreading to four other trucks. This fire prompted Nikola to open an investigation into the incident. That same morning, Nikola posted a response to the fire on X, formerly known as Twitter, stating, in relevant part, that "[f]oul play is suspected as a vehicle was seen in the area of the affected trucks just prior to the incident and an investigation is underway."

108.    On August 11, 2023, despite Nikola's earlier suggestion of foul play, the Company recalled all 209 BEV trucks that Nikola had ever built or delivered. The recall was spurred by Nikola's finding that a coolant leak inside a battery pack caused the fire on June 23, 2023.

109.    On September 4, 2023, another Nikola BEV truck caught fire at a warehouse in Tempe, Arizona, as a result of the same battery pack deficiency that caused the fire on June 23, 2023.

110.    Just four days later, on September 8, 2023, another Nikola BEV truck ignited near Nikola's headquarters. Nikola sent a statement to *Electrek.com*, a news website devoted to the electric transportation and sustainable energy industry, that stated, "there was a thermal incident with one engineering validation battery-electric truck near Nikola's Pheonix headquarters. No one was injured. This pre-production truck was outside and undergoing batter fire investigation and testing."

111.    During the Relevant Period, the Individual Defendants made materially false and misleading statements regarding Nikola's business, operations, and compliance policies. The Individual Defendants specifically made false and/or misleading statements and/or failed to disclose that: (i) Nikola's safety and structural controls relating to the manufacture of battery components were materially deficient; (ii) as a result, Nikola's vehicles faced a heightened risk of product recall as the vehicles were not safe to operate, rendering the vehicles unusable; and (iii) as a further result of the foregoing, Nikola's public statements were materially false and misleading at all times during the Relevant Period.

**False and Misleading Statements**

***February 24, 2022 10-K***

112.    On February 24, 2022, Nikola filed an annual report on Form 10-K with the SEC that reported Nikola's financial and operating results for the fiscal year ending on December 31, 2021 (the "2021 10-K"). The 2021 10-K was signed by Defendants Russell, Brady, Girsky, Forester De Rothschild, Petrovich, Mansuetti, Marx, Shindler, Smith, and Thompson and

contained certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") attesting to the 2021

10-K's accuracy and disclosure of all weaknesses in internal controls, which were signed by

Defendants Russell and Brady. The 2021 10-K provided an overview of Nikola's business by

stating, in relevant part:

> "Our vision is to be the zero-emissions transportation industry leader. We plan to
> realize this vision through world-class partnerships, groundbreaking research and
> development, and a revolutionary business model.
>
> ***
>
> We are a technology innovator and integrator, working to develop innovative
> energy and transportation solutions. We are pioneering a business model that will
> enable corporate customers to integrate next-generation truck technology,
> hydrogen fueling and charging infrastructure, and related maintenance. By creating
> this ecosystem, we and our strategic business partners and suppliers expect to build
> a long-term competitive advantage for clean technology vehicles and next
> generation fueling solutions.
>
> Our expertise lies in design, innovation, software, and engineering. We assemble,
> integrate, and commission our vehicles in collaboration with our business partners
> and suppliers. Our approach has always been to leverage strategic partnerships to
> help lower cost, increase capital efficiency and accelerate speed to market. To date,
> we believe we have assembled world-class partners and we plan to continue to add
> partners where appropriate."

113.    The 2021 10-K further discussed Nikola's BEV competition by stating, in relevant

part:

> "Tesla, Daimler, Volvo, as well as other automotive manufacturers, have
> announced their plans to bring Class 8 BEV trucks to the market over the coming
> years. Other competitors include BYD, Peterbilt, XOS, Lion, Volvo, Hyliion, and
> potentially Cummins. We believe all of these competitors are in various stages of
> rolling out their vehicles, including pilot programs and providing test vehicles to
> customers. ***We believe that we compete favorably with out competitors as the
> range of Nikola Tre BEV truck is higher than most of our competitors***."[1]

114.    The 2021 10-K addressed Nikola's products, stating that, in relevant part:

---

[1] All emphases included herein are added unless otherwise indicated.

As the commercial transportation sector transitions towards zero-emission solutions, we believe there will be a need to offer tailored solutions that meet the needs of each customer. By offering both BEV (for short and medium-haul, city, regional, and drayage deliveries) and FCEV (for medium and long-haul) solutions, we believe we are positioned to change the commercial transportation sector by providing solutions that address the full range of customer needs.

The electrical propulsion of our BEV and FCEV trucks have a modular design which allows the batteries and associated controls to be configures to either a BEV pr FCEV propulsion. Our architecture inside the centralized e-axle is configured for the appropriate power needs for the BEV and FCEV for a wide range of applications. Our cab-over design allows us to address both the European and North American markets which provides engineering and manufacturing synergies.

\*\*\*

The Nikola Tre Class 8 truck is based on the S-WAY platform from Iveco and integrates our electrified propulsion, technology, controls and infotainment. In addition, we redesigned the majority of the high-visibility components and body panels of the S-WAY truck and added several new interior features including a digital cockpit with an infotainment screen, interment screen and panel, redesigned steering wheel, and new seats. The cab-over design is desirable for city center application due to shorter vehicle length, improved maneuverability, and better visibility. We are marketing the Nikola Tre BEV for short and medium-haul applications in North America and Europe.

The BEV version of Nikola Tre is expected to be one of the first zero emission Class 8 trucks to market. BEV trucks run on a fully electric drivetrain powered by rechargeable batteries. Our BEV has an estimated range of up to 350 miles and is designed to address the short and medium-haul market. During the initial roll-out, most of our customers indicated that they intend to charge at their terminal. To help facilitate this, along with our dealer network and key partners, we plan to provide consulting expertise and, as required, products and services designed to ensure charging is available.

115.   The 2021 10-K discussed governmental regulations, stating, in relevant part:

***Vehicle Safety and Testing***

***Our vehicles are subject to, and are designed to comply with, numerous regulatory requirements established by the National Highway Traffic Safety Administration, or NHTSA, including applicable U.S. federal motor vehicle safety standards, or FMVSS.*** As a manufacturer, we must self-certify that the vehicles meet or are exempt from all applicable FMVSS before a vehicle can be imported or sold into the U.S.

\*\*\*

***Our BEV and FCEV trucks are designed to meet specific NHTSA type approvals*** and we will commence with testing our vehicles for the [European Union Whole

Vehicle Type Approval] and following European type approval-process to assure compliance with the [United Nations Economic Commission Europe] requirements.

*** 

Our BEV and FCEV trucks consist of many electronic and automated components and systems. ***Our vehicles are designed to comply with the International Standards Organization's, or ISO, Functional Safety Standard.*** This standard addresses the integration of electrical systems and software and identifies the possible hazards caused by malfunctioning behavior of the safety-related electrical or electronic systems, including the interaction of these systems.

*** 

***Battery Safety and Testing Regulation***

***Our vehicles are designed to ISO standards for electrically-propelled vehicles in vehicle operational safety specifications and connecting to an external power supply.*** Additionally, we are incorporating other IS battery system standards in our vehicles.

Some of these standards include:

- *Conductive charging* – for on board charge electromagnetic requirements;

- *Battery Pack Enclosure Protection* – degree of protection of the electrical equipment within an enclosure from the effects due to the ingress of water; and

- *Testing Lithium-ion Traction Battery Packs and Systems* – safety performance requirements during a variety of testing, such as vibration, thermal cycling, overcharge, and loss of thermal control.

Our battery pack conforms with mandatory regulations governing the transport of "dangerous goods," which included lithium-ion batteries that may present a risk in transportation.

***February 24, 2022 Earnings Call***

116.    On February 24, 2022, on the same day Nikola filed the 2021 10-K, Nikola hosted an earnings call with investors and analysts to discuss Nikola's fourth quarter of 2021 earnings (the "2021 Q4 Earnings Call"). During the 2021 Q4 Earnings Call, Defendant Russell stated, in relevant part:

39

[Total Transportation Services ("TTSI")] tells us that no other battery electric truck they have tested has gone thus far on a single charge. The range and reliability of the Tre BEV is a testament to the capability and dedication of the extraordinary engineering and manufacturing teams we have here at Nikola. The official start of our series production is scheduled late next month and we are looking forward to delivering revenue generating trucks starting in late next month and we are looking forward to delivering revenue generating trucks starting in Q2. We produce 30 pre-series Tre BEVs on the like in Coolidge, Ariona during the fourth quarter, but because of constraints in the supply of battery components, e-axles, displays or chips, only 11 of these vehicles have been commissioned and released to customers or Nikola's public road test fleet so far. The remaining 19 trucks are staged off the end of the production line and are waiting for productions spec component or for final commissioning.

### *2022 Proxy Statement*

117.    On April 20, 2022, Nikola filed the 2022 Proxy Statement with the SEC. Defendants Russell, Girsky, Forester De Rothschild, Mansuetti, Marx, Petrovich, Shindler, Smith, and Thompson solicited the 2022 Proxy Statement, filed pursuant to Section 14(a) of the Exchange Act, which contained material misstatements and omissions.

118.    The 2022 Proxy Statement called for shareholder approval of, *inter alia*: (1) the election of Defendants Russell, Girsky, Forester De Rothschild, Mansuetti, Marx, Petrovich, Shindler, Smith, and Thompson; (2) to approve an amendment to the Second Amended and Restated Certificate of incorporation to increase the number of authorized shares of Nikola's common stock from 600,000,000 to 800,000,000; (3) to approve, on a non-binding advisory basis, the Company's named executive officers' compensation; and (4) to ratify the appointment of Ernst & Young LLP as Nikola's independent registered public accounting firm for Fiscal Year 2022.

119.    With respect to the Board role in Risk Oversight, the 2022 Proxy Statement stated the following:

One of the key functions of our board of directors is informed oversight of our risk management process. Our board of directors does not have a standing risk management committee, but rather administers this oversight function directly through the board of directors as a whole, as well as through various standing committees of the board of directors that address risks inherent in their respective

areas of oversight. In particular, our board of directors is responsible for monitoring and assessing strategic risk exposure and the audit committee has the responsibility to consider and discuss major financial risk exposures and the steps our management will take to monitor and control such exposures, including guidelines and policies to govern the process by which risk assessment and management is undertaken. The audit committee also monitors compliance with legal and regulatory requirements, as well as the COVID-19 pandemic and cybersecurity risks. Our compensation committee also assesses and monitors whether our compensation plans, policies and programs comply with applicable legal and regulatory requirements.

120. Regarding the Code of Conduct and Code of Ethics, the 2022 Proxy Statement

stated the following:

We believe that our corporate governance initiatives comply with the Sarbanes-Oxley Act and the rules and regulations of the SEC adopted thereunder. In addition, we believe our corporate governance initiatives comply with the rules of Nasdaq. Our board of directors will continue to evaluate our corporate governance principles and policies.

Our board of directors has adopted a Code of Business Conduct and Ethics that applies to each of our directors, officers and employees. The code addresses various topics, including:

- Compliance with laws, rules and regulations;

- Confidentiality;

- Conflicts of interest;

- Corporate opportunities;

- Fair dealing;

- Payments or gifts from others;

- Health and safety;

- Insider trading;

- Protection and proper use of company assets; and

- Record keeping.

Our board of directors has also adopted a Code of Ethics for Senior Financial Officers applicable to our Chief Executive Officer and Chief Financial Officer as well as other key management employees addressing ethical issues. Our Code of

41

Business Conduct and Ethics and our Code of Ethics for Senior Financial Officers can only be amended by the approval of a majority of our board of directors. Any waiver to our Code of Business Conduct and Ethics for an executive officer or director or any waiver of the Code of Ethics for Senior Financial Officers may only be granted by our board of directors or our sustainability, nominating and corporate governance committee and must be timely disclosed as required by applicable law. We have implemented whistleblower procedures that establish formal protocols for receiving and handling complaints from employees. Any concerns regarding accounting or auditing matters reported under these procedures will be communicated promptly to our audit committee.

To date, there have been no waivers under our Code of Business Conduct and Ethics or our Code of Ethics for Senior Financial Officers. We intend to disclose future amendments to certain provisions of these codes or waivers of such codes granted to executive officers and directors on our website at www.nikolamotor.com within four business days following the date of such amendment or waiver.

121.   The 2022 Proxy Statement was materially false and misleading because it failed to disclose that, contrary to the 2022 Proxy Statement's descriptions of the Board's risk oversight function and the Audit Committee's responsibilities, the Board and its committees were not adequately exercising these functions, were causing and/or permitting the Company to issue false and misleading statements, and were not complying with the Code of Conduct or the Code of Ethics.

122.   The 2022 Proxy Statement also failed to disclose, *inter alia*, that: (i) Nikola's safety and structural controls relating to the manufacture of battery components were materially deficient; (ii) as a result, Nikola's vehicles faced a heightened risk of product recall as the vehicles were not safe to operate, rendering the vehicles unusable; and (iii) as a further result of the foregoing, Nikola's public statements were materially false and misleading at all times during the Relevant Period.

### *May 5, 2022 Press Release*

123.   Nikola issued a press release announcing the Company's first quarter of 2022 results on May 5, 2022. The press release stated, in relevant part:

Nikola […] today reported financial results for the quarter ended March 31, 2022. "During the first quarter, we reached a significant milestone with the start of serial production for the Nikola Tre BEV at our Coolidge, Arizona manufacturing facility and are currently delivering saleable trucks to dealers for customer deliveries,' said [Russel.] "We look forward to scaling production and delivering 300-500 production vehicles to customers this year."

**Nikola Tre BEV Update**

During the first quarter, the final 10 of a total fleet of 40 pre-series Tre BEVs came off the line in Coolidge, Arizona. Pre-series trucks continue to be used in customer pilots, dealer demos, and internal R&D testing. On April 29, we successfully completed our first Tre BEV customer pilot with TTSI. We also successfully completed a 14-day pilot with Univar Solutions (NYSE: UNVR). We are currently undergoing pilot testing with several other customers, including Covenant Logistics (Nasdaq: CVLG).

*May 5, 2022 Earnings Call*

124.    Nikola held an earnings conference call with investors and analysts to review Nikola's first quarter of 2022 financial performance (the "2022 Q1 Earnings Call"). During the Q&A portion of the 2022 Q1 Earnings Call, Defendant Russell was asked to address the BEV uptime. Defendant Russell replied, in relevant part:

The BEV uptime is critical. Any Class 8 uptime is critical. As you know. These are the machines that our customers base their business on. If they don't operate, they don't make money. And We're very pleased with the results of the pilots we've run so far with TTSI, and others.

We have a lot going on this front that we haven't publicly disclosed. We are working with lots of customers. Our deals are working with lots of customers, all dealers have trucks at this point, and are running demos and working with customers.

So the demand is pretty seismic. ***If you can get somebody a zero emission trucks [sic] that is reliable and capable, like ours is, then everybody wants one. And then becomes a discussion about the terms at this point. So we're very pleased with how we're doing so far.***

As you saw in the video, the feedback we're getting so far, it's just tremendous. These trucks are proving very reliable and capable, and the drivers love them. So in the case of TTSI, they tested more trucks than anybody I know of, more than 20 different zero emission trucks, reduced emission trucks, alternative fuel trucks that they have tested, they say. And

43

as you saw the feedback in the video, those are the leaders of TTSI that we were interviewed on the video.

***August 1, 2022 Press Release***

125.    Nikola issued a press release on August 1, 2022, titled, "Nikola Agrees to Acquire Romeo Power, to Bring Battery Pack Engineering and Production In-House." The press release stated, in relevant part:

> As Romeo's largest customer, Nikola expects the acquisition will allow for significant operational improvement and cost reduction in battery pack production. The addition of Romeo's battery and battery management system (BMS) engineering capabilities are also expected to support accelerated product development and improved performance for Nikola customers.
>
> "Romeo has been a valued supplier to Nikola, and we are excited to further leverage their technological capabilities as the landscape for vehicle electrification grows more sophisticated. With control over the essential battery pack technologies and manufacturing process, we believe we will be able to accelerate the development of our electrification platform and better serve our customers," said Russell[.] "Given our strong relationship with Romeo and ongoing collaboration, we are confident in our ability to successfully integrate and deliver the many expected strategic and financial benefits of those acquisition. We look forward to creating a zero-emissions future together."
>
>                                         ***
>
> **Compelling Strategic Rationale**
>
> • Vertical integration and single product focus will drive significant operational improvement and cost reduction for one of the most expensive components of the bill of materials
>
> • Integrated commercial vehicle electrification platform is expected to lead manufacturing excellence and expected annual cost savings of up to $350 million by 2026; reduce non-cell related battery pack costs by 30-40% by the end of 2023
>
> • An important strategic move for Nikola with minimal capital outlay that will bring Romeo's deep battery and BMS engineering capabilities in-house; expected to accelerate Nikola's product development, increase range and charge rates, and improve customer experiences

- Provide Nikola with domestic battery pack manufacturing capability, complementing Nikola's commitment to dual source battery pack strategy to satisfy capacity needs

- Romeo has proven battery pack technologies and a significant battery cell supply agreement in place

### August 4, 2022 Press Release

126.     Nikola issued a press release on August 4, 2022, announcing Nikola's second quarter of 2022 financial performance. The press release contained a quote from Defendant Russell, stating, in relevant part, "[o]ur momentum continued during the second quarter as we began delivering production vehicles to dealers and recognizing revenue from the sale of our Nikola Tre BEVs," and "[w]e are committed to executing on our second half milestones."

### August 4, 2022 Earnings Call

127.     Nikola held an earnings conference call with analysts and investors on August 4, 2022, to review Nikola's second quarter of 2022 financial performance (the "2022 Q2 Earnings Call"). During the 2022 Q2 Earnings Call, Defendant Russell stated, in relevant part, "I'd like to highlight right now, what it takes to actually get zero-emission trucks into commercial service in hauling freight every day. I think this further validated Nikola's longstanding focus and strategy of providing a total solution including service, support, and most importantly in this case, charging and fueling infrastructure."

### October 14, 2022 Press Release

128.     Nikola issued a press release on October 14, 2022, announcing that the Company had completed its acquisition of Romeo Power, Inc. The press release quoted Defendant Lohscheller, stating, in relevant part, "[t]e acquisition of Romeo will enhance Nikola's capabilities, allowing us to vertically integrate in an effort to accelerate product development and improve

performance for our customers. Today's milestone further solidifies our commitment to transforming the transportation industry."

### February 23, 2023 10-K

129.   On February 23, 2023, Nikola reported the Company's financial and operating results for the year ended on December 31, 2022 in an annual report on Form 10-K (the "2022 10-K"), filed with the SEC. The 2022 10-K was signed by Defendants Lohscheller, Brady, Girsky, Forester De Rothschild, Petrovich, Mansuetti, Marx, Russell, Shindler, Smith, and Vesey, and contained certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") attesting to the 2021 10-K's accuracy and disclosure of all weaknesses in internal controls, which were signed by Defendants Lohscheller and Brady. The 2022 10-K contained substantively similar descriptions of Nikola's business overview, products, and government regulation as those discussed in the 2021 10-K in ¶¶ 112-115.

### February 23, 2023 Earnings Call

130.   On February 23, 2023, Nikola held an earnings conference call with analysts and investors, discussing Nikola's fourth quarter of 2022 results ("the 2022 Q4 Earnings Call"). During the 2022 Q4 Earnings Call, Defendant Lohscheller stated, in relevant part:

> Moving on to our Tre BEV program; we utilized the fourth quarter to improve our product and address customer feedback. This resulted in lower delivery numbers as we worked to make the changes to trucks in Nikola dealer inventory before delivery to end customers. We chose to do this as soon as possible before delivering additional vehicles while we have access to trucks at dealer service centers and our Coolidge manufacturing facility. Some of the changes we implemented include our second major post-production software update and eAxle bearing enhancement and improvements to our battery management software. Our second software update was a significant improvement for us and provided the following improvements.
>
> Increasing the usable battery capacity giving the truck up to 40 miles of increased range, enable 350 kilowatt charging capability allowing 80% of charge in 90 minutes. Introduction of front and rear cameras, improved low-voltage power consumption, Bluetooths and mobile app enhancement. We have also worked

diligently with customers, dealers, and charging infrastructure partners to accelerate the deployment of BEV charging at customer depots.

***February 27, 2023 Press Release***

131.    Nikola issued a press release announcing the Company's fourth quarter of 2022 and full year 2022 results on February 27, 2023. The press release stated, in relevant part:

> "During the fourth quarter we strengthened our commercial and sales operations, which is expected to lead to increased sales and accelerated customer deliveries," said Lohscheller. "As a whole, we made significant progress on both the truck and energy infrastructure fronts. The advances we have made on battery charging and hydrogen solutions with strategic partners, and the unveiling of our hydrogen mobile fueler under the HYLA brand, will allow Nikola to provide fully integrated mobility solutions to customers for both the BEV and FCEV."

***2023 Proxy Statement***

132.    On April 25, 2023, Nikola filed the 2023 Proxy Statement with the SEC. Defendants Lohscheller, Girsky, Mansuetti, Petrovich, Shindler, Smith, and Vesey solicited the 2023 Proxy Statement, filed pursuant to Section 14(a) of the Exchange Act, which contained material misstatements and omissions.

133.    The 2023 Proxy Statement called for shareholder approval of, *inter alia*: (1) to elect Defendants Lohscheller, Girsky, Mansuetti, Petrovich, Shindler, Smith, and Vesey; (2) to approve an amendment to the Second Amended and Restated Certificate of Incorporation to increase the number of authorized shares of Nikola's common stock from 800,000,000 to 1,600,000,000; (3) to approve the issuance of Nikola common stock upon the conversion of 8.00% / 11.00% Series B Convertible Senior PIK Toggle Notes due 2026 and related change of control, for purposes of complying with Nasdaq listing rule 5635; (4) to approve an amendment to the Nikola Corporation 2020 Stock Incentive Plan (the "2020 Incentive Plan") to increase the number of shares of common stock available for issuance thereunder by 30,000,000 shares, from 20,000,000 to 50,000,000; (5) to approve, on a non-binding advisory basis, the Company's named executive officers'

compensation; and (6) to ratify the appointment of Ernst & Young LLP as Nikola's independent registered public accounting firm for the year ending December 31, 2023.

134.    With respect to the Board's role in Risk Oversight, the 2023 Proxy Statement stated the following:

> One of the key functions of our board of directors is informed oversight of our risk management process. Our board of directors does not have a standing risk management committee, but rather administers this oversight function directly through the board of directors as a whole, as well as through various standing committees of the board of directors that address risks inherent in their respective areas of oversight. In particular, our board of directors is responsible for monitoring and assessing strategic risk exposure and the audit committee has the responsibility to consider and discuss major financial risk exposures and the steps our management will take to monitor and control such exposures, including guidelines and policies to govern the process by which risk assessment and management is undertaken. The audit committee also monitors compliance with legal and regulatory requirements, as well as the COVID-19 pandemic and inflation, interest rate and cybersecurity risks. Our compensation committee also assesses and monitors whether our compensation plans, policies and programs comply with applicable legal and regulatory requirements.

135.    Regarding the Code of Conduct and the Code of Ethics, the 2023 Proxy Statement stated the following:

> We believe that our corporate governance initiatives comply with the Sarbanes-Oxley Act and the rules and regulations of the SEC adopted thereunder. In addition, we believe our corporate governance initiatives comply with the rules of Nasdaq. Our board of directors will continue to evaluate our corporate governance principles and policies.

> Our board of directors has adopted a Code of Business Conduct and Ethics that applies to each of our directors, officers, and employees. The code addresses various topics, including:

> - Compliance with laws, rules and regulations;
> - Confidentiality;
> - Conflicts of interest;
> - Corporate opportunities;
> - Fair dealing;

- Payment or gifts from others;

- Health and safety;

- Insider trading;

- Protection and proper use of company assets; and

- Record keeping.

Our board of directors has also adopted a Code of Ethics for Senior Financial Officers applicable to our Chief Executive Officer and Chief Financial Officer as well as other key management employees addressing ethical issues. Our Code of Business Conduct and Ethics and our Code of Ethics for Senior Financial Officers can only be amended by the approval of a majority of our board of directors. Any waiver to our Code of Business Conduct and Ethics for an executive officer or director or any waiver of the Code of Ethics for Senior Financial Officers may only be granted by our board of directors or our sustainability, nominating and corporate governance committee and must be timely disclosed as required by applicable law. We have implemented whistleblower procedures that establish formal protocols for receiving and handling complaints from employees. Any concerns regarding accounting or auditing matters reported under these procedures will be communicated promptly to our audit committee.

To date, there have been no waivers under our Code of Business Conduct and Ethics or our Code of Ethics for Senior Financial Officers. We intend to disclose future amendments to certain provisions of these codes or waivers of such codes granted to executive officers and directors on our website at www.nikolamotor.com within four business days following the date of such amendment or waiver.

136.    The 2023 Proxy Statement was materially false and misleading because it failed to

disclose that, contrary to the 2022 Proxy Statement's descriptions of the Board's risk oversight

function and the Audit Committee's responsibilities, the Board and its committees were not

adequately exercising these functions ,were causing and/or permitting the Company to issue false

and misleading statements, and were not complying with the Code of Conduct or the Code of

Ethics.

137.    The 2023 Proxy Statement also failed to disclose, *inter alia*, that: (i) Nikola's safety

and structural controls relating to the manufacture of battery components were materially deficient;

(ii) as a result, Nikola's vehicles faced a heightened risk of product recall as the vehicles were not

safe to operate, rendering the vehicles unusable; and (iii) as a further result of the foregoing, Nikola's public statements were materially false and misleading at all times during the Relevant Period.

### May 9, 2023 Press Release

138.    The Company issued a press release announcing Nikola's first quarter of 2023 results. The press release quoted Defendant Lohscheller, stating that "Nikola had a very solid quarter, building sales momentum with Class 8 battery electric truck deliveries to customers, and orders for 140 hydrogen fuel cell trucks from customers," "[w]e have the right products at the right time, and as we move forward, we will be focusing on the North American market, hydrogen fuel cell trucks, the HYLA hydrogen refueling business, and autonomous technologies[,]" and "[w]e are on the right path with our re-energized management and commercial teams, improved sales strategy, new dealers, and energy partners[.]"

### June 23, 2023 Tre BEV Truck Fire

139.    A Nikola Tre BEV caught fire at Nikola's headquarters on June 23, 2023. The fire ultimately spread to four other trucks and Nikola subsequently opened an investigation into the incident.

140.    Nikola posted a tweet that same morning in response to the fire. The tweet stated:



**Nikola Motor Company** ✓
@nikolamotor                                                                    ···

Early this morning behind our Phoenix headquarters, a fire occurred which affected multiple battery electric trucks. No one has been injured. Foul play is suspected as a vehicle was seen in the area of the affected trucks just prior to the incident and an investigation is underway. Our team applauds the Phoenix and Tempe Fire Departments for taking quick action and staying on top of the situation.

We will release additional information as it becomes available.

9:16 AM · Jun 23, 2023 · **105K** Views

141.    Despite Nikola's suggestion of foul play, following the news of the fire, Nikola's stock price fell $0.09 per share to a close at $1.29 per share on June 23, 2023, amounting to a 6.52% fall.

**August 4, 2023 Press Release**

142.    Nikola issued a press release detailing the Company's second quarter of 2023 results on August 4, 2023. The press release stated, in relevant part:

> "Nikola has turned the corner and is well on the way to executing our business plan and achieving profitability,' said Lohscheller. "We have nearly doubled our unrestricted cash position while also substantially reducing our spending. We continue to drive forward in our mission to decarbonize heavy-duty trucking and ensure Nikola is successful for the long haul."
>
> "Our management team is highly focused on delivering trucks to customers at scale and making the most of our first mover advantage in the hydrogen refueling ecosystem," Lohscheller continued.
>
> ***
>
> **Battery-Electric Truck**
>
> During the second quarter we continued to build sales momentum on the battery-electric trucks, wholesaling to 45 dealers with 66 retail stores. We expect sales momentum to continue building as customers realize the total cost of ownership benefits of zero-emissions trucks and additional government support is introduced to accelerate the transition to zero-emissions.
>
> ***
>
> **Coolidge, Arizona Manufacturing Facility**
>
> In Coolidge, the Phase 2 assembly expansion has been completed and the new mixed-model line capable of building both battery-electric and hydrogen fuel cell electric trucks has been installed. The current production capacity of the facility is 2,4000 trucks / year on three (3) shifts.
>
> Progress continued on the fuel cell power module assembly line. We expect the fuel cell power module assembly line to be completed in Q4 of this year. Fuel cell power module utilized in hydrogen fuel cell electric trucks in 2023 will be built and shipped to Coolidge by Bosch.
>
> Progress also continued on the battery pack line installation in Coolidge. When we resume battery-electric truck production, the battery packs utilized will be built at our facility in Coolidge.

*August 4, 2023 Earnings Call*

143.    Nikola held an earnings call with investors and analysts to discuss Nikola's second quarter earnings (the "2023 Q2 Earnings Call") on August 4, 2023. During the call, Defendant Lohscheller stated, in relevant part:

> Let's talk about the fire of our battery electric truck at our headquarters in late June. First of all, we are thankful that no one was hurt. Secondly, it has been determined that only one truck started the fire and spread to the other four. We have two investigations ongoing, one with our technical and safety staff and one being conducted by a third party and we will share more when we know more. ***We want everyone to know Nikola's trucks are designed with safety as the first priority and are rigorously tested prior to release. These tests include front, side and rear crash testing, battery coolant leakage monitoring and battery thermal runaway detection.***
>
> Our trucks meet and exceed federal motor vehicle safety standards and United Nations Global Technical Regulations 20 standards as well as meet the industry best practices including the Society of Automobile Engineers, the International Organization for Standardization and the Underwriters Laboratories.

144.    The statements referenced above in ¶¶ 112-116, 119-120, 123-131, 134-135, 138, 140, and 142-143 were materially false and misleading because they failed to disclose, *inter alia*, that: (i) Nikola's safety and structural controls relating to the manufacture of battery components were materially deficient; (ii) as a result, Nikola's vehicles faced a heightened risk of product recall as the vehicles were not safe to operate, rendering the vehicles unusable; and (iii) as a further result of the foregoing, Nikola's public statements were materially false and misleading at all times during the Relevant Period.

**The Truth Emerges**

145.    Nikola issued a press release on August 11, 2023. The press release was titled, "Nikola Announces Preliminary Results of Battery Investigations, Voluntary Recalls 209 Class 8 Battery-Electric Trucks." Although Nikola had previously suggested the presence of foul play, the press release revealed, in relevant part:

The safety of customers, dealers and team members are Nikola's top priority. Nikola […] today prides the preliminary results of its battery pack investigations and as a precautionary measure, announces a voluntary recall of approximately 209 Class 8 Tre battery-electric vehicles (BEVs). Nikola is currently in the process of filing this voluntary recall with the National Highway Traffic Safety Administration (NHTSA) and is placing a temporary hold on new BEV sales until a resolution is in place.

These actions do not affect the hydrogen fuel cell electric vehicle (FCEV) currently in production as the truck's battery pack has a different design.

Following an August 10 presentation of preliminary findings from Exponent, a reputable third-party investigator, a coolant leak inside a single battery pack was found to be the probable cause of the truck fire at the Company's headquarters in Phoenix, Ariz. On June 23, 2023. The findings were further corroborated by a minor thermal incident that impacted one pack on an engineering validation truck parked at the company's Coolidge, Ariz. plant on Aug. 10. No one was injured in either incident.

Internal investigations from Nikola's safety and engineering teams indicate a single supplier component within the battery pack as the likely source of the coolant leak and efforts are underway to provide a field remedy in the coming weeks.

*Tre BEV trucks may remain in operation, but for optimal performance and safety, the Nikola team encourages all customers and dealers to immediately take the following actions:*

- Place the Main Battery Disconnect (MBD) switch into the "ON" position at all times to enable real-time vehicle monitoring and safety systems operation

- Consider parking trucks outside to allow for over-the-air updates and better connectivity with Fleet Command, Nikola's truck monitoring system

The company's software systems are being used in real-time to monitor trucks in the field closely and continually assess risks. Thus far, only two (2) battery packs have experienced a thermal event, out of more than 3,100 packs on trucks produced to date (less than 0.07%).

***

"At Nikola, we take safety very seriously," said Girsky[.] "We stated from the beginning that as soon as our investigations were concluded we would provide an update, and we will continue our transparency as we learn more."

The company's initial statement on June 23 alluded to foul play as a possible cause of the incident, based on video footage showing a vehicle parked next to the impacted trucks and quickly pulling away after a bright flash and the

53

commencement of the fire. Extensive internal and third party-led hypothesis testing, employee and contractor interviews, and hours of video footage review has since suggested foul pay or other external factors were unlikely to have caused the incident.

146.    On this news, the Company's stock price fell $0.13 per share to close at $1.82 per share, a 6.67% drop.

147.    Less than a month later, a third Nikola BEV truck caught fire inside a warehouse in Tempe, Arizona on September 4, 2023. The fire was caused by the same battery pack deficiency that caused the fire on June 23, 2023.

148.    Just four days later, a fourth Nikola BEV truck ignited near Nikola's headquarters on September 8, 2023. In a statement sent to *Electrek.com*, news website devoted to the electric transportation and sustainable energy industry, Nikola stated:

> On Friday, September 8, at approximately 8:30am, there was a thermal incident with one engineering validation battery-electric truck near Nikola's Pheonix headquarters. No one was injured. This pre-production truck was outside and undergoing battery fire investigation and testing. We thank the Pheonix first responders for their quick action. We will share more information as we learn more.

149.    On this news, the Company's stock price fell $0.16 per share to close at $0.88 per share on September 8, 2023, a 15.38% fall.

## DAMAGES TO NIKOLA

150.    As a direct and proximate result of the Individual Defendants' conduct, Nikola has lost and expended, and will continue to lose and expend, many millions of dollars.

151.    Such expenditures include, but are not limited to, legal fees, costs, and any payments for resolution of or to satisfy a judgment associated with the Securities Class Action filed against the Company, its CEO, two former CEOs, and two former CFOs, and any related investigations, into the Company, and amounts paid to outside lawyers, accountants, and investigators in connection thereto.

152.   Such expenditures also include, but are not limited to, fees, costs, and payments for resolution of or to satisfy judgments associated with any other lawsuits filed against the Company or the Individual Defendants based on the misconduct alleged herein, and amounts paid to outside lawyers, accountants, and investigators in connection thereto.

153.   Such expenditures will also include costs incurred in any internal investigations pertaining to violations of law, costs incurred in defending an investigations or legal actions taken against the Company due to its violations of law, and payments of any fines or settlement amounts associated with the Company's violations.

154.   Additionally, these expenditures include, but are not limited to, unjust compensation, benefits, and other payments provided to the Individual Defendants who breached their fiduciary duties to the Company.

155.   As a direct and proximate result of the Individual Defendants' conduct, Nikola has also suffered and will continue to suffer a loss of reputation and goodwill, and a "liar's discount" that will plague the Company's stock in the future due to the Company's and their misrepresentations.

## <u>DERIVATIVE ALLEGATIONS</u>

156.   Plaintiff brings this action derivatively and for the benefit of Nikola to redress injuries suffered, and to be suffered, as a result of the Individual Defendants' breaches of their fiduciary duties as directors and/or officers of Nikola, unjust enrichment, abuse of control, gross mismanagement, abuse of control, waste of corporate assets and violations of Sections 14(a), 10(b), and 21D of the Exchange Act, as well as the aiding and abetting thereof.

157.   Nikola is named solely as a nominal party in this action. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

158.     Plaintiff is, and has been at all relevant times, a shareholder of Nikola. Plaintiff will adequately and fairly represent the interests of Nikola in enforcing and prosecuting its rights, and, to that end, has retained competent counsel, experienced in derivative litigation, to enforce and prosecute this action.

## DEMAND FUTILITY ALLEGATIONS

159.     Plaintiff incorporates by reference and re-alleges each and every allegation stated above as if fully set forth herein.

160.     A pre-suit demand on the Board of Nikola is futile and, therefore, excused. At the time of filing of this action, the Board consists of the following eight individuals: Defendants Girsky, Mansuetti, Petrovich, Shindler, Smith, and Vesey (the "Director-Defendants") along with non-parties John C. Vesco and Jonathan Pertchik (collectively with the Director-Defendants, the "Directors"). Plaintiff needs only to allege demand futility as to four of the eight Directors who are on the Board at the time this action is commenced.

161.     Demand is excused as to all of the Director-Defendants because each one of them faces, individually and collectively, a substantial likelihood of liability as a result of the scheme they engaged in knowingly or recklessly to make and/or cause the Company to make false and misleading statements and omissions of material facts, which renders them unable to impartially investigate the charges and decide whether to pursue action against themselves and the other perpetrators of the scheme.

162.     Moreover, five of the Director-Defendants solicited the 2022 Proxy Statement and six of the Director-Defendants solicited the 2023 Proxy Statement to call for a shareholder vote to, *inter alia*, re-elect themselves to the Board, thus allowing them to continue breaching their fiduciary duties to the Company.

163.     The false and misleading statements alleged herein led to, among other things, shareholders approving the 2023 Proxy Statement, which contained an amendment to the 2020 Incentive Plan to increase the common stock authorized for issuance under the 2020 Incentive Plan by 30,000,000 shares, from 20,000,000 to 50,000,000. The Director-Defendants sought to unjustly enrich themselves through increasing the stock allotted for their compensation under the 2020 Incentive Plan while they were breaching their fiduciary duties to the Company. As the 2020 Incentive Plan is administered by the Compensation Committee, Director-Defendants Girsky, Mansuetti, Shindler, and Smith would be unable to make demand against Director-Defendants Petrovich and Vesey, who are responsible for apportioning their compensation.

164.     In complete abdication of their fiduciary duties, the Director-Defendants either knowingly or recklessly participated in making and/or causing the Company to make the materially false and misleading statements alleged herein. The fraudulent scheme was intended to make the Company appear more profitable and attractive to investors. As a result of the foregoing, the Director-Defendants breached their fiduciary duties, face a substantial likelihood of liability, are not disinterested, and demand upon them is futile, and thus excused.

165.     Additional reasons that demand as to Defendant Girsky is futile follow. Defendant Girsky has served as the Chairman of the Board from September 2020 to August 2023.  Defendant Girsky is also a member of the Sustainability, Nominating, and Corporate Governance Committee. He has received and continues to receive handsome compensation, as discussed above.  As the Company's highest officer, he conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements, consciously disregarded his duties to monitor such controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets. Defendant Girsky also solicited the false and misleading 2022 and 2023

Proxy Statements, which led to, *inter alia*, his re-election to the Board and shareholders approving an amendment to the 2020 Incentive Plan to increase the common stock authorized for issuance under the 2020 Incentive Plan by 30,000,000 shares, thereby allowing him to continue to breach his fiduciary duties to the Company and materially benefit from the false and misleading statements alleged herein. Defendant Girsky personally signed both the 2021 10-K and the 2022 10-K, which both contained materially false and misleading statements. Furthermore, Defendant Girsky is a defendant in the Securities Class Action. For these reasons, too, Defendant Girsky breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

166.    Additional reasons that demand on Defendant Mansuetti is futile follow. Defendant Mansuetti has served as a Company director since June 2020. He also serves as a member of the Audit Committee. As a trusted Company director and member of the Audit Committee, he conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements, consciously disregarded his duties to monitor such controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets. Defendant Mansuetti also solicited the false and misleading 2022 and 2023 Proxy Statements, which led to, *inter alia*, his re-election to the Board and shareholders approving an amendment to the 2020 Incentive Plan to increase the common stock authorized for issuance under the 2020 Incentive Plan by 30,000,000 shares, thereby allowing him to continue to breach his fiduciary duties to the Company and materially benefit from the false and misleading statements alleged herein. Additionally, Defendant Mansuetti personally signed both the 2021 10-K and the 2022 10-K, which both contained materially false and misleading statements. For these reasons, too,

Defendant Mansuetti breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

167.    Additional reasons that demand on Defendant Petrovich is futile follow. Defendant Petrovich has been a member of the board since December 2020. Additionally, Defendant Petrovich serves as Chair of the Compensation Committee. As a trusted Company director and Chair of the Compensation Committee, she conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements, consciously disregarded her duties to monitor such controls over reporting and engagement in the scheme, and consciously disregarded her duties to protect corporate assets. Defendant Petrovich also solicited the false and misleading 2022 and 2023 Proxy Statements, which led to, *inter alia*, her re-election to the Board and shareholders approving an amendment to the 2020 Incentive Plan to increase the common stock authorized for issuance under the 2020 Incentive Plan by 30,000,000 shares, thereby allowing her to continue to breach her fiduciary duties to the Company and materially benefit from the false and misleading statements alleged herein. Additionally, Defendant Petrovich personally signed both the 2021 10-K and the 2022 10-K which contained materially false and misleading statements. For these reasons, too, Defendant Petrovich breached her fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon her is futile and, therefore, excused.

168.    Additional reasons that demand on Defendant Shindler is futile follow. Defendant Shindler has served as a member of the board since September 2020. Defendant Shindler is also the Chair of the Audit Committee. He receives and is entitled to receive handsome compensation, as discussed above. As a trusted Company director and Chair of the Audit Committee, he conducted little, if any, oversight of the Company's engagement in the scheme to make false and

misleading statements, consciously disregarded his duties to monitor such controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets. Defendant Shindler also solicited the false and misleading 2022 and 2023 Proxy Statements, which led to, *inter alia*, his re-election to the Board and shareholders approving an amendment to the 2020 Incentive Plan to increase the common stock authorized for issuance under the 2020 Incentive Plan by 30,000,000 shares, thereby allowing him to continue to breach his fiduciary duties to the Company and materially benefit from the false and misleading statements alleged herein. Additionally, Defendant Shindler personally signed both the 2021 10-K and the 2022 10-K. For these reasons, too, Defendant Shindler breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

169.    Additional reasons that demand on Defendant Smith is futile follow. Defendant Smith has served as a Company director since November 2020. Defendant Smtih also serves as a member of the Audit Committee and the Sustainability, Nominating and Corporate Governance Committee. He receives and is entitled to receive handsome compensation, as discussed above. As a trusted Company director, he conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements, consciously disregarded his duties to monitor such controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets. Defendant Smith also solicited the false and misleading 2022 and 2023 Proxy Statements, which led to, *inter alia*, his re-election to the Board and shareholders approving an amendment to the 2020 Incentive Plan to increase the common stock authorized for issuance under the 2020 Incentive Plan by 30,000,000 shares, thereby allowing him to continue to breach his fiduciary duties to the Company and materially benefit from the false and misleading

statements alleged herein. Additionally, Defendant Smith personally signed both the 2021 10-K and the 2022 10-K.  For these reasons, too, Defendant Smith breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

170.    Additional reasons that demand on Defendant Vesey is futile follow. Defendant Vesey has served as a Company director since October 2022. Vesey also serves as a member of the Compensation Committee. He receives and is entitled to receive handsome compensation, as discussed above. As a trusted Company director, he conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements, consciously disregarded his duties to monitor such controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets.  Defendant Vesey also solicited the false and misleading 2023 Proxy Statement, which led to, *inter alia*, his re-election to the Board and shareholders approving an amendment to the 2020 Incentive Plan to increase the common stock authorized for issuance under the 2020 Incentive Plan by 30,000,000 shares, thereby allowing him to continue to breach his fiduciary duties to the Company and materially benefit from the false and misleading statements alleged herein. Additionally, Defendant Vesey personally signed the 2022 10-K, which contained materially false and misleading statements. For these reasons, too, Defendant Vesey breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

171.    Additional reasons that demand on the Board is futile follow.

172.     All of the Director-Defendants benefitted directly from the wrongdoing alleged herein, as the false and misleading statements caused the Company's stock price to be artificially inflated, thus increasing the value of Nikola stock held by the Director-Defendants.

173.     In violation of the Code of Conduct, the Director-Defendants conducted little, if any, oversight of the Company's issuance of materially false and misleading statements to the public and to facilitate and disguise the Director-Defendants violations of law, including breaches of fiduciary duty, unjust enrichment, abuse of control, gross mismanagement, waste of corporate assets, and violations of Section 14(a) of the Exchange Act, and for contribution under Sections 10(b) and 21D of the Exchange Act against Defendants Russell, Lohscheller, Girsky, Brady, and Pasterick. In further violation of the Code of Conduct, the Directors failed to maintain the accuracy of Company records and reports, conduct business in an honest and ethical manner, and properly report violations of the Code of Conduct. Thus, the Director-Defendants face a substantial likelihood of liability and demand is futile as to them.

174.     Defendants Shindler, Smith, and Mansuetti (the "Audit Committee Defendants") serve on the Company's Audit Committee. Pursuant to the Audit Committee Charter, Audit Committee Defendants were responsible for overseeing, *inter alia*, Nikola's accounting and financial reporting processes and internal control over financial reporting, the audit and integrity of the Company's financial statements, and the Company's compliance with applicable law. As a result of the Audit Committee's failures of management and oversight, the Audit Committee Defendants face a substantial likelihood of liability for their breach of fiduciary duties and any demand upon them is futile.

175.     Defendants Forester De Rothschild, Girsky, and Smith (the "Governance Committee Defendants") serve on the Company's Governance Committee. Pursuant to the

Governance Committee Charter, the Governance Committee Defendants were responsible for overseeing, *inter alia*, exercise their risk management and risk assessment functions and failed to ensure adequate Board oversight of the Company's corporate governance practices, risk management process, and the Code of Conduct. As a result of the Governance Committee Defendants' failures of management and oversight, the Governance Committee Defendants face a substantial likelihood of liability for their breach of fiduciary duties and any demand upon them is futile.

176.    Nikola has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Director-Defendants have not filed any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt to recover for Nikola any part of the damages Nikola suffered and will continue to suffer thereby. Thus, any demand upon the Director-Defendants would be futile.

177.    The Director-Defendants' conduct described herein and summarized above could not have been the product of legitimate business judgment as it was based on bad faith and intentional, reckless, or disloyal misconduct. Thus, none of the Director-Defendants can claim exculpation from their violations of duty pursuant to the Company's charter (to the extent such a provision exists). As a majority of the Directors face a substantial likelihood of liability, they are self-interested in the transactions challenged herein and cannot be presumed to be capable of exercising independent and disinterested judgment about whether to pursue this action on behalf of the shareholders of the Company. Accordingly, demand is excused as being futile.

178.    The acts complained of herein constitute violations of fiduciary duties owed by Nikola's officers and directors, and these acts are incapable of ratification.

179.     The Director-Defendants may also be protected against personal liability for their acts of mismanagement and breaches of fiduciary duty alleged herein by directors' and officers' liability insurance if they caused the Company to purchase it for their protection with corporate funds, i.e., monies belonging to the stockholders of Nikola. If there is a directors' and officers' liability insurance policy covering the Directors, it may contain provisions that eliminate coverage for any action brought directly by the Company against the Directors, known as, *inter alia*, the "insured-versus-insured exclusion." As a result, if the Directors were to sue themselves or certain of the officers of Nikola, there would be no directors' and officers' insurance protection. Accordingly, the Director-Defendants cannot be expected to bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage, if such an insurance policy exists, will provide a basis for the Company to effectuate a recovery. Thus, demand on the Director-Defendants is futile and, therefore, excused.

180.     If there is no directors' and officers' liability insurance, then the Director-Defendants will not cause Nikola to sue the Individual Defendants named herein, as, if they did, they would face a large uninsured individual liability. Accordingly, demand is futile in that event, as well.

181.     Thus, for all the reasons set forth above, all of the Directors, and, if not all of them, at least four of the Directors, cannot consider a demand with disinterestedness and independence. Consequently, a demand upon the Board is excused as futile.

## FIRST CLAIM

### Against Individual Defendants for Violations of
### Section 14(a) of the Exchange Act

182.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

183.    Section 14(a) Exchange Act claims alleged herein are based solely on negligence. They are not based on any allegation of reckless or knowing conduct by or on behalf of the Individual Defendants. The Section 14(a) claims alleged herein do not allege and do not sound in fraud. Plaintiff specifically disclaims any allegations, reliance upon any allegation, or reference to any allegation of fraud, scienter, or recklessness with regard to these nonfraud claims.

184.    Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1), provides that "[i]t shall be unlawful for any person, by use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 12 of this title [15 U.S.C. § 78l]."

185.    Rule 14a-9, promulgated pursuant to § 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

186.    Under the direction and watch of the Directors, the 2022 and 2023 Proxy Statements failed to disclose that: (1) the Company maintained deficient safety and structural controls related to its manufacturing of battery components; and (2) the foregoing deficiencies rendered Nikola's vehicles unsafe to operate and thus unusable, thereby raising the likelihood of a product recall.

187.    The April 2022 Proxy Statement stated, regarding the Company's Code of Conduct, that:

> We strive to be a leader in corporate responsibility and demonstrate our values through responsible business practices. Our corporate governance is guided by a Business Code of Conduct and Ethics and supplemented by an Ethics and Whistleblower hotline available to all stakeholders to report concerns. We are committed to transparency and our strategy will include improved disclosure of our programs and performance through our website, annual filings and reports, as well as key [environmental, social, and governance] ratings agencies.

188.    The April 2022 Proxy Statement was false and misleading because, despite assertions to the contrary, its Code of Conduct was not followed, as the Individual Defendants allowed false and misleading statements to be issued to the investing public.

189.    In the exercise of reasonable care, the Individual Defendants should have known that by misrepresenting or failing to disclose the foregoing material facts, the statements contained in the April 2022 and April 2023 Proxy Statements were materially false and misleading. The misrepresentations and omissions were material to Plaintiff in voting on the matters set forth for shareholder determination in the 2022 and/or the 2023 Proxy Statements, including but not limited to, electing seven directors to serve until the 2024 annual meeting of stockholders, approve an amendment to the Articles of Incorporation to double the number of authorized shares of common stock from 800,000,000 to 1,600,000,000, approve the issuance of common stock  upon the conversion of  8.00% / 11.00% Series B Convertible Senior PIK Toggle Notes due 2026 and related change of control, for purposes of complying with Nasdaq listing rule 5635, approve an amendment to the Nikola Corporation 2020 Stock Incentive Plan to increase the number of shares of common stock available for issuance by 30,000,000 shares, from 20,000,000 to 50,000,000, to approve, on a non-binding advisory basis, the Company's named executive officers'

compensation, and ratify the appointment of Ernst & Young LLP as independent registered public accounting firm.

190.    The Company was damaged as a result of the Individual Defendants' material misrepresentations and omissions in the 2022 and 2023 Proxy Statements.

## SECOND CLAIM

### Against the Individual Defendants for Breach of Fiduciary Duties

191.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

192.    Each Individual Defendant owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of Nikola's business and affairs.

193.    Each of the Individual Defendants violated and breached his or her fiduciary duties of candor, good faith, loyalty, reasonable inquiry, oversight, and supervision.

194.    The Individual Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company, as alleged herein. The Individual Defendants intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of Nikola.

195.    In breach of their fiduciary duties owed to Nikola, the Individual Defendants willfully or recklessly made and/or caused the Company to make false and misleading statements that failed to disclose that: (i) Nikola's safety and structural controls relating to the manufacture of battery components were materially deficient; (ii) as a result, Nikola's vehicles faced a heightened risk of product recall as the vehicles were not safe to operate, rendering the vehicles unusable; and (iii) as a further result of the foregoing, Nikola's public statements were materially false and misleading at all times during the Relevant Period.

196.    The Individual Defendants also failed to correct and/or caused the Company to fail to correct the false and misleading statements and omissions of material fact, rendering them personally liable to the Company for breaching their fiduciary duties.

197.    Also, in breach of their fiduciary duties, the Individual Defendants failed to maintain internal controls, while three of the Individual Defendants profited from improper and lucrative insider sales.

198.    The Individual Defendants had actual or constructive knowledge that the Company issued materially false and misleading statements, and they failed to correct the Company's public statements and representations. The Individual Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth, in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such material misrepresentations and omissions were committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of Nikola's securities, and disguising insider transactions.

199.    The Individual Defendants had actual or constructive knowledge that they had caused the Company to improperly engage in the fraudulent schemes set forth herein and to fail to maintain internal controls. The Individual Defendants had actual knowledge that the Company was engaging in the fraudulent schemes set forth herein, and that internal controls were not adequately maintained, or acted with reckless disregard for the truth, in that they caused the Company to improperly engage in the fraudulent schemes and to fail to maintain adequate internal controls, even though such facts were available to them. Such improper conduct was committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of Nikola's securities and engaging in insider transactions. The Individual Defendants, in good faith, should have taken

appropriate action to correct the schemes alleged herein and to prevent them from continuing to occur.

200.    These actions were not a good-faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

201.    As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, Nikola has sustained and continues to sustain significant damages.

202.    As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

203.    Plaintiff on behalf of Nikola has no adequate remedy at law.

### THIRD CLAIM

**Against Individual Defendants for Unjust Enrichment**

204.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

205.    By their wrongful acts, violations of law, and false and misleading statements and omissions of material fact that they made and/or caused to be made, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of, Nikola.

206.    The Individual Defendants, based on improper conduct, received bonuses, stock options, or similar compensation from Nikola that was tied to the performance or artificially inflated valuation of Nikola, received compensation that was unjust in light of the Individual Defendants' bad faith conduct, or received excessive compensation.

207.    Plaintiff, as a shareholder and a representative of Nikola, seeks restitution from the Individual Defendants and seeks an order from this Court disgorging all profits, including from insider transactions, benefits, and other compensation, including any performance-based or

valuation-based compensation, obtained by the Individual Defendants due to their wrongful conduct and breach of their fiduciary and contractual duties.

208.    Plaintiff on behalf of Nikola has no adequate remedy at law.

## FOURTH CLAIM

### Against the Individual Defendants for Abuse of Control

209.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

210.    The Individual Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence Nikola, for which they are legally responsible.

211.    As a direct and proximate result of the Individual Defendants' abuse of control, Nikola has sustained significant damages.  As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations of candor, good faith, and loyalty, Nikola has sustained and continues to sustain significant damages.  As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

212.    Plaintiff on behalf of Nikola has no adequate remedy at law.

## FIFTH CLAIM

### Against the Individual Defendants for Gross Mismanagement

213.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

214.    By their actions alleged herein, the Individual Defendants, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of Nikola in a manner consistent with the operations of a publicly held corporation.

215.    As a direct and proximate result of the Individual Defendants' gross mismanagement and breaches of duty alleged herein, Nikola has sustained and will continue to sustain significant damages.

216.    As a result of the misconduct and breaches of duty alleged herein, the Individual Defendants are liable to the Company.

217.    Plaintiff on behalf of Nikola has no adequate remedy at law.

## SIXTH CLAIM

### Against Individual Defendants for Waste of Corporate Assets

218.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

219.    By their actions alleged herein, the Individual Defendants, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of Nikola in a manner consistent with the operations of a publicly held corporation.

220.    As a direct and proximate result of the Individual Defendants' gross mismanagement and breaches of duty alleged herein, Nikola has sustained and will continue to sustain significant damages.

221.    As a result of the misconduct and breaches of duty alleged herein, the Individual Defendants are liable to the Company.

222.    Plaintiff, on behalf of Nikola, has no adequate remedy at law.

## SEVENTH CLAIM

### Against Defendants Girsky, Lohscheller, Russell, Pasterick, and Brady for Contribution Under Sections 10(b) and 21D of the Exchange Act

223.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

224.     Nikola and Defendants Girsky, Lohscheller, Russell, Pasterick, and Brady are named as defendants in the Securities Class Action, which asserts claims under the federal securities laws for violations of Sections 10(b) and 20(a) of the Exchange Act, and SEC Rule 10b-5 promulgated thereunder. If and when the Company is found liable in the Securities Class Action for these violations of the federal securities laws, the Company's liability will be in whole or in part due to Defendants Girsky, Lohscheller, Russell, Pasterick, and Brady's willful and/or reckless violations of their obligations as officers and/or directors of Nikola.

225.     Defendants Girsky, Lohscheller, Russell, Pasterick, and Brady, because of their positions of control and authority as officers and/or directors of Nikola, were able to and did, directly and/or indirectly, exercise control over the business and corporate affairs of Nikola, including the wrongful acts complained of herein and in the Securities Class Action.

226.     Accordingly, Defendants Girsky, Lohscheller, Russell, Pasterick, and Brady are liable under 15 U.S.C. § 78j(b), which creates a private right of action for contribution, and Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(f), which governs the application of a private right of action for contribution arising out of violations of the Exchange Act.

227.     As such, Nikola is entitled to receive all appropriate contribution or indemnification from Girsky, Lohscheller, Russell, Pasterick, and Brady.

## **PRAYER FOR RELIEF**

FOR THESE REASONS, Plaintiff demands judgment in the Company's favor against all Individual Defendants as follows:

(a)     Declaring that Plaintiff may maintain this action on behalf of Nikola, and that Plaintiff is an adequate representative of the Company;

(b)      Declaring that the Individual Defendants have breached and/or aided and abetted the breach of their fiduciary duties to Nikola;

(c)      Determining and awarding to Nikola the damages sustained by it as a result of the violations set forth above from each of the Individual Defendants, jointly and severally, together with pre-judgment and post-judgment interest thereon;

(d)      Directing Nikola and the Individual Defendants to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Nikola and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote the following resolutions for amendments to the Company's Bylaws or Certificate of Incorporation and the following actions as may be necessary to ensure proper corporate governance policies:

       1. a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the board;

       2. a provision to permit the shareholders of Nikola to nominate at least four candidates for election to the Board; and

       3. a proposal to ensure the establishment of effective oversight of compliance with applicable laws, rules, and regulations.

(e)      Awarding Nikola restitution from Individual Defendants, and each of them;

(f)      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees, costs, and expenses; and

(g)      Granting such other and further relief as the Court may deem just and proper.

Dated: February 21, 2024

Respectfully submitted,

Of Counsel:

**FARNAN LLP**

**THE BROWN LAW FIRM, P.C.**

/s/ Michael J. Farnan

Timothy Brown

Brian E. Farnan (Bar No. 4089)

767 Third Avenue, Suite 2501

Michael J. Farnan (Bar No. 5165)

New York, NY 10017

919 N. Market St., 12th Floor

Telephone: (516) 922-5427

Wilmington, DE 19801

Facsimile: (516) 344-6204

Telephone: (302) 777-0300

Email: tbrown@thebrownlawfirm.net

Facsimile: (302) 777-0301

Email: bfarnan@farnanlaw.com

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**

Email: mfarnan@farnanlaw.com

Peretz Bronstein

Eitan Kimelman

*Attorneys for Plaintiff*

60 East 42nd Street, Suite 4600

New York, NY 10165

Telephone: (212) 697-6484

Facsimile: (212) 697-7296

Email: peretz@bgandg.com

eitank@bgandg.com